Matthew R. Lewis (7919)
Taylor J. Smith (17537)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway, 10th Floor
Salt Lake City, UT 84101
Telephone: (801) 994-4646
mlewis@kba.law
tsmith@kba.law

*Attorneys for Defendant Thomas Smith*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| MARK COMBS; VLAD IACOB; and BENJAMIN NORTHEY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | **DEFENDANT THOMAS SMITH'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| SAFEMOON LLC; SAFEMOON US, LLC; SAFEMOON CONNECT, LLC; TANO LLC; SAFEMOON LTD; SAFEMOON PROTOCOL LTD; SAFEMOON MEDIA GROUP LTD; BRADEN JOHN KARONY; JACK HAINES-DAVIES; HENRY "HANK" WYATT; JAKE PAUL; KYLE NAGY; DEANDRE CORTEZ WAY; BEN PHILLIPS; MILES PARKS MCCOLLUM; THOMAS SMITH; and DANIEL M. KEEM, | Case No. 2:22-cv-00642-DBB-JCB<br><br>Judge David Barlow<br>Magistrate Judge Jared C. Bennett |
| Defendants. | |

---

Defendant Thomas Smith hereby moves pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6) to dismiss each of the causes of action alleged against him in Plaintiffs' First Amended Complaint with prejudice.

# **TABLE OF CONTENTS**

INTRODUCTION AND RELIEF REQUESTED........................................................................1

BACKGROUND .........................................................................................................................2

GOVERNING LEGAL STANDARDS .......................................................................................4

ARGUMENT...............................................................................................................................6

   I.  Plaintiffs' Claims Under Section 10(b) Are Not Pled with Particularity and Must Be
      Dismissed ........................................................................................................................6

      A.  The FAC Does Not Allege that Mr. Smith Made Any False Statements or Material
          Omissions ..........................................................................................................6

      B.  The FAC Does Not Properly Allege Scheme Liability Against Mr. Smith..................7

   II.  Plaintiffs' Claim Under Section 12(a) Must Be Dismissed ...............................................11

   III.  Plaintiffs' Control Person Claims (Claims IV and V) Do Not Adequately Plead Control
       Person Liability as to Mr. Smith........................................................................................13

   IV.  Plaintiffs' RICO Claims Are Improper and Must Be Dismissed .....................................14

      A.  Plaintiffs' RICO Claim is Pre-Empted by the PSLRA .............................................14

      B.  Plaintiffs Lack Standing to Bring a RICO Claim......................................................14

   V.  Plaintiffs' Claim Against Mr. Smith Under the Florida Deceptive and Unfair Trade
      Practices Act Must Be Dismissed......................................................................................16

   VI.  Plaintiffs' Claims for Conspiracy, Unjust Enrichment, and Restitution Are Improper and
       Must Be Dismissed ...........................................................................................................18

      A.  Plaintiffs' General Allegations of Conspiracy Fail to Identify the State Law That
          Applies or to Satisfy the Elements of Conspiracy Under Utah Law ..........................18

      B.  Plaintiffs Do Not Adequately Plead Unjust Enrichment or Restitution Claims Against
          Mr. Smith ...........................................................................................................20

CONCLUSION............................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen vs. IM Solutions, LLC*,
   94 F. Supp. 3d 1216 (E.D. Okla. 2015)................................................................5

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
   827 F.3d 1229 (10th Cir. 2016) .......................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................4

*Bixler v. Foster*,
   596 F.3d 751 (10th Cir. 2010) ........................................................................14

*Blair v. Wachovia Mortg. Corp.*,
   No. 11-566, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012).......................................6

*Borteanu v. Nikola Corp.*,
   No. 20-01797, 2023 WL 1472852 (D. Ariz. Feb. 2, 2023) ...............................8, 9

*Boulware v. Baldwin*,
   No. 11-762, 2012 WL 1412698 (D. Utah Apr. 23, 2012) .....................................14

*Brereton v. Bountiful City Corp.*,
   434 F.3d 1213 (10th Cir. 2006) ........................................................................6

*Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*,
   No. 17-81100, 2018 WL 1072211 (S.D. Fla. Feb. 27, 2018)................................17

*Cannon v. PNC Bank, N.A.*,
   No. 15-00131, 2016 WL 9779290 (D. Utah Aug. 31, 2016)................................19

*Carol Gamble Trust 86 v. E-Rex, Inc.*,
   No. 03-15032, 84 F. App'x 975, 978, 2004 WL 43216 (9th Cir. 2004) ...................6

*City of Industry v. City of Fillmore*,
   198 Cal. App. 4th 191 (Cal. App. 2 Dist. 2011) ...................................................19

*Cochise Consultancy,Inc. v. U.S. ex rel. Hunt*,
   139 S. Ct. 1507 (2019) ....................................................................................5

*D.H.G. Properties, LLC v. Ginn Companies, LLC*,
    No. 09-735, 2010 WL 5584464 (M.D. Fla. Sept. 28, 2010) .................................................16

*DeBlasio v. Pignoli*,
    918 A.2d 822 (Pa. Commw. Ct. 2007) ................................................................................19

*Farlow v. Peat, Marwick, Mitchell & Co.*,
    956 F.2d 982 (10th Cir. 1992) ...........................................................................................6

*Feng v. Walsh*,
    No. 19-24138, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021)..............................................16

*Fidelity Nat'l Title Ins. Co v. Worthington*
    344 P.3d 156 (Utah Ct. App. 2015) .............................................................................19, 20

*Foxfield Villa Associates, LLC v. Robben*,
    967 F.3d 1082 (10th Cir. 2020) .........................................................................................18

*Francis v. Mead Johnson & Co.*,
    No. 10-00701, 2010 WL 5313540 (D. Colo. Dec. 17, 2010) ................................................6

*Friedman v. Dollar Thrifty Auto. Group, Inc.*,
    No. 12-02432, 2013 WL 5448078 (D. Colo. Sept. 27, 2013) .............................................18

*GeoMetWatch Corp. v. Hall*,
    No. 14-00060, 2017 WL 1136946 (D. Utah Mar. 27, 2017)............................................6, 19

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ..........................................................................................................15

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012)...............................................................................21

*In Re Ethereummax Inv. Litig.*,
    No. 22-00163, 2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022) .............................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    781 F. Supp. 2d 955 (N.D. Cal. 2011)..................................................................................18

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ............................................................................................................7

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ...........................................................................................5

*Maher v. Durango Metals, Inc.*,
  144 F.3d 1302 (10th Cir. 1998) ...................................................................... 13, 14

*Mangindin v. Washington Mut. Bank*,
  637 F. Supp. 2d 700 (N.D. Cal. 2009)................................................................ 21

*Nieman v. Dryclean U.S.A. Franchise Co.*,
  178 F.3d 1126 (11th Cir. 1999) .......................................................................... 18

*Perret v. Wyndham Vacation Resorts, Inc.*,
  889 F. Supp. 2d 1333 (S.D. Fla. 2012)............................................................... 16

*Price v. Pinnacle Brand, Inc*,
  138 F.3d 602 (5th Cir. 1998) .............................................................................. 15

*Rain Int'l, LLC v. Cook*,
  No. 2:20-CV-00537-JNP-DBP, 2023 WL 1954526 (D. Utah Feb. 10, 2023) ......... 19

*Sallee v. Dollar Thrifty Auto. Grp., Inc.*,
  No. 14-250, 2015 WL 1281518 (N.D. Okla. Mar. 20, 2015).................................. 18

*Security Sys., Inc. v. Alder Holdings, LLC*,
  421 F. Supp. 3d 1186 (D. Utah 2019) ................................................................... 5

*Smallen v. The Western Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) .......................................................................... 11

*Smith v. LifeVantage Corp.*,
  341 F.R.D. 82 (D. Utah 2022) ............................................................................... 8

*Smith v. LifeVantage Corp.*,
  429 F. Supp. 3d 1275 (D. Utah 2019) .................................................................... 8

*Solid Q Holdings, LLC v. Arenal Energy Corp.*,
  No. 15-00419, 2017 WL 782283 (D. Utah Feb. 28, 2017) .................................... 14

*TDC Lending v. Private Capital Group, Inc.*,
  340 F. Supp. 3d 1218 (Dist. Utah 2018)..................................................... 7, 9, 10, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................... 5, 9, 10

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
  472 F.3d 702 (10th Cir. 2006) .............................................................................. 5

*U.S. ex rel. Wynne v. Blue Cross and Blue Shield of Kansas, Inc.*,
  2006 WL 1064108 (D. Kan. 2006) ........................................................................5

*Walker v. Hickenlooper*,
  627 F. App'x 710 (10th Cir. 2015) .......................................................................9

*Walters v. Blankenship*,
  931 So. 2d 137 (Fla. Dist. Ct. App. 2006) ..........................................................19

*WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*,
  No. 07-2093, 2008 WL 3048859 (M.D. Fla. Aug. 4, 2008)................................16

*Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*,
  2008 WL 4642975 (D. Utah 2008) ......................................................................20

*Zhang v. LifeVantage Corp.*,
  No. 16-965, 2017 WL 2599883 (D. Utah June 15, 2017)....................................10

**Other Authorities**

15 U.S.C. § 78u-4(b) ...........................................................................................5

15 U.S.C. § 78u-4(b)(2)(A) ..................................................................................9

18 U.S.C. § 1964(c) ........................................................................................14,15

47 U.S.C. § 230.....................................................................................................3

Federal Rule of Civil Procedure 9(b) ...................................................................5

Florida Deceptive and Unfair Trade Practices Act .......................................*passim*

Private Securities Litigation Reform Act .....................................................*passim*

Racketeer Influenced and Corrupt Organizations Act ..................................*passim*

Securities Exchange Act of 1934 ..................................................................*passim*

## INTRODUCTION AND RELIEF REQUESTED

The First Amended Complaint ("FAC") is 184 pages long and includes purported claims against 17 individuals and entity defendants, including Mr. Smith. The FAC, which is anything but a short and plain statement demonstrating why Plaintiffs are entitled to relief, should be dismissed pursuant to Rule 8(a)(2).

The FAC should also be dismissed because it fails to include particularized allegations as required by Rule 9(b), which applies to all of Plaintiffs claims, and the Private Securities Litigation Reform Act ("PSLRA"). As discussed in greater detail below, the FAC utterly fails to identify any purportedly actionable statements or conduct by Mr. Smith, much less with particularity.

Plaintiffs first assert claims against Mr. Smith under Securities Exchange Act of 1934 ("Exchange Act") Section 10(b) and its attendant Rule 10b-5 (Claims I and II). Because of the potential for abuse, the PSLRA requires that such claims meet a stringent pleading standard demonstrating an individual defendant's personal participation in any alleged misrepresentations and a strong inference of scienter. The FAC demonstrates neither as to Mr. Smith.

Plaintiffs' claim under Section 12 of the Securities Act of 1933 ("Securities Act") (Claim III) is also insufficient as to Mr. Smith. Section 12 requires that Plaintiffs plead particularized facts indicating that Mr. Smith was personally involved in the solicitation of their individual purchases of Safemoon Tokens. Again, the FAC does not include such allegations and Plaintiffs' Section 12 claim must be dismissed as a result.

Plaintiffs also assert a claim against Mr. Smith under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), even though the PSLRA makes it clear that any RICO claims are pre-empted if securities claims are asserted. Even if Plaintiffs' RICO claim was not pre-empted,

such a claim would be improper because Plaintiffs have only suffered expectation losses (not damage to property) and therefor lack standing to assert a RICO claim.

Plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") are also fatally deficient. Such claims are also preempted by federal securities laws and only apply to transactions within the State of Florida. No such claim can be maintained as to Mr. Smith.

Plaintiffs' claims for common law conspiracy, unjust enrichment and restitution must also be dismissed. Plaintiffs fail to designate the law under which their conspiracy claim is asserted, which itself is grounds for dismissal. Plaintiffs also fail to meet the elements for any such claim under Utah law because they have not specifically alleged an underlying tort. Moreover, California does not recognize claims for unjust enrichment and restitution if other claims seeking restitution are pled, as Plaintiffs do here.

Because none of the FAC's causes of action state a claim against Mr. Smith upon which relief can be granted, and further amendment would be futile, (as demonstrated by the fact that Plaintiffs have already amended once and failed to successfully raise well-pled allegations in over 500 paragraphs), Mr. Smith hereby respectfully requests that the Court dismiss the claims against him with prejudice under Rule 12(b)(6).

## **BACKGROUND**[1]

The FAC alleges that Mr. Smith was employed as Safemoon's Chief Blockchain Officer, FAC ¶ 20, and that along with Defendants Karony, Nagy, Haines-Davis and Wyatt, Mr. Smith is

---

[1] The motions to dismiss filed by co-Defendants Safemoon, Inc. [ECF No. 150] ("Safemoon Motion", Henry "Hank" Wyatt [ECF No. 149] ("Wyatt Motion"), and Kyle Nagy [ECF No. 152] ("Nagy Motion"), provide useful descriptions regarding many background facts, including the history and volatile nature of cryptocurrencies. In order to preserve the Court's time and resources, Mr. Smith only addresses the factual allegations that pertain specifically to him and his arguments.

an "Executive Defendant". FAC ¶ 21. The FAC then alleges that Nagy recruited Mr. Smith to assist in the development of Safemoon Tokens, that Mr. Smith and Nagy together wrote the code for the Safemoon tokens, and that Nagy dispersed significant amounts of the Safemoon tokens to various wallets under Mr. Smith's control. FAC ¶ 49. The FAC also alleges that Nagy and Mr. Smith met with Karony and Haines-Davies to discuss a partnership for the sale of the Safemoon token, and that Smith would use his public profile to market the Safemoon tokens and act as a member of the online marketing team. FAC ¶¶ 50, 53.

However, specific allegations relating to Smith's purported role in are noticeably absent from the FAC. The FAC claims that Mr. Smith marketed Safemoon by introducing an investor who wanted to moderate the Company's Discord account to the Community's Community Manager, FAC ¶ 152, that Smith welcomed another person to the Company, FAC ¶ 154, that Smith "republished" a post by Jake Paul, FAC ¶ 157, "promoted" tweets by Parks McCollum, FAC ¶ 160–61, re-tweeted a tweet by Defendant Keem, FAC ¶ 165, and reposted a tweet by Arriaga FAC ¶ 295. The FAC also alleges that Smith tweeted saying "THE SHOW GOES ON," "I'm not leaving," and "Bullish on the team, I love working @safemoon." FAC ¶¶ 311, 313.[2]

The FAC also generally alleges that Mr. Smith sold off large portions of his Safemoon token holdings during May and June, 2021, FAC ¶¶ 257–60, and, that on November 23, 2021 the Company announced Mr. Smith had left, FAC ¶ 313.[3]

---

[2] Regarding these, it's not even clear that Mr. Smith could be civilly liable for the re-tweets given 47 U.S.C. § 230's provision that "[n]o … user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

[3] The FAC also references Smith in paragraphs 239, 299–300, 312, 351–52, 361–62, 388, 391, 400, and 442. However, not only are the paragraphs facially devoid of any allegation of an

Based on these limited allegations, Plaintiffs assert nine causes of action against Mr. Smith: (1) a claim under Section 10(b) of the Exchange Act and Rule 10b-5(b) for alleged false and misleading statements (Claim I); (2) a claim under Section 10(b) and Rule 10b-5(a) and (c) for alleged scheme liability (Claim II); (3) a claim under Sections 5 and 12(a)(1) of the Securities Act for alleged sale of an unregistered security (Claim III); (4) a "control person" claim under Section 15 of the Securities Act (Claim IV); (5) a "control person" claim under Section 20(a) of the Exchange Act (Claim V); (6) a claim for alleged violation of RICO, 18 U.S.C. § 1961, et seq. (Claim X); (7) a common law conspiracy claim (Claim XI); (8) a claim for violation of FDUTPA, Ch. 501, §211(1), Fl. Stat. Ann. (Claim XII); and (9) a claim for unjust enrichment/restitution under California law (Claim XIII). Because each of these claims is grounded on the same alleged fraudulent scheme, they are subject to heightened pleading standards. As addressed more fully below, the FAC's allegations against Mr. Smith are insufficient and the FAC must be dismissed.

## GOVERNING LEGAL STANDARDS

As noted by other defendants, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). The facts alleged must reasonably suggest that "the defendant is liable for the misconduct alleged." *Id.* "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "[c]ourt[s] need not accept as true unreasonable

---

inherently unlawful, or even unethical, act, but Plaintiffs also do not appear to rely on the contents of these paragraphs in any of their causes of action. Indeed, Smith is referenced by name only once throughout all the paragraphs reciting the causes of action, but even here he is only alleged to have made a hearsay statement about something another defendant did. FAC ¶ 442. The utter lack of specification as to Smith as an individual further supports dismissal.

inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Allen vs. IM Solutions*, *LLC,* 94 F. Supp. 3d 1216, 1220 (E.D. Okla. 2015).

Because Plaintiffs bring securities and other claims sounding in fraud, the FAC must meet heightened pleading requirements. The PSLRA, which was enacted to "curb abuse in private securities lawsuits" and governs the Section 10(b) claims, "impose[s] heightened pleading requirements," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007), including the requirement that securities plaintiffs "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b). Thus, a Section 10(b) plaintiff "bears a heavy burden at the pleading stage." *Id.*

In addition, fraud claims and those sounding in fraud are subject to Rule 9(b)'s heightened pleading requirements. *Security Sys., Inc. v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1194 (D. Utah 2019). Thus, under Federal Rule of Civil Procedure 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud which requires them to set forth "the who, what, when, where, and how" of the misconduct with particularity. *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy,Inc. v. U.S. ex rel. Hunt*, 139 S. Ct. 1507 (2019); *see also U.S. ex rel. Wynne v. Blue Cross and Blue Shield of Kansas, Inc.*, 2006 WL 1064108, at *3 (D. Kan. 2006). Where—as here—there are multiple individual defendants, the Tenth Circuit has cautioned that the complaint must identify which defendant is alleged to have made each of the challenged statements. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000). And, Rule 9(b) applies to claims that do not innately require proof of fraud and even if the word "fraud" is not

used. *See Security Sys.*, 421 F. Supp. 3d at 1194. Here, all claims are premised on the same purported fraudulent scheme. *See, e.g.*, FAC ¶¶ 2–4. As such, each claim must be pled with Rule 9(b) particularity. *See, e.g.*, *GeoMetWatch Corp. v. Hall*, No. 14-00060, 2017 WL 1136946, at *17 (D. Utah Mar. 27, 2017) (unpublished) (conspiracy claim based on fraud is subject to Rule 9(b)); *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992) (same for RICO); *Francis v. Mead Johnson & Co.*, No. 10-00701, 2010 WL 5313540, at *3 (D. Colo. Dec. 17, 2010) (unpublished) (same for unjust enrichment); *Blair v. Wachovia Mortg. Corp.*, No. 11-566, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (unpublished) (same for FDUTPA); *Carol Gamble Trust 86 v. E-Rex, Inc.*, No. 03-15032, 84 F. App'x 975, 978, 2004 WL 43216, at *2 (9th Cir. 2004) (not selected for publication) (same for Section 12(a)(1))

Because they have not been so plead, the claims must be dismissed, and once the claims are dismissed, leave to amend should be denied when amendment would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## ARGUMENT

### I. Plaintiffs' Claims Under Section 10(b) Are Not Pled with Particularity and Must Be Dismissed[4]

    A. <u>The FAC Does Not Allege that Mr. Smith Made Any False Statements or Material Omissions</u>

As indicated above, claims under Section 10(b) must be pled with particularity. Despite filing a 184-page complaint, Plaintiffs have failed to meet this burden as to Mr. Smith. Plaintiffs

---

[4] Pursuant to DUCivR7-1(a)(7), Mr. Smith hereby refers to and joins in the Wyatt Motion that Plaintiffs' lengthy complaint violates Rule 8(a)(2) and should be dismissed for that reason alone. *See* Wyatt Motion at 8–9. Mr. Smith also refers to and joins the arguments in the Safemoon Motion that all of Plaintiffs' securities-related claims, including claims under Section 10b-5, should be

attempt to assert their 10(b) claim against "All Defendants" but do not even attempt to plead that Mr. Smith individually made *any* of the numerous alleged misrepresentations identified in ¶ 434 of the FAC. This attempt at group pleading is improper and insufficient. *TDC Lending v. Private Capital Group, Inc.*, 340 F. Supp. 3d 1218, 1227 (Dist. Utah 2018) (holding that the PSLRA precludes "group pleading"). It is axiomatic that a defendant cannot be liable under Section 10(b) for a misrepresentation or omission unless he personally "made" the challenged statement. The "maker of a statement" is limited to "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The FAC fails to include any allegations that Mr. Smith personally made any of the alleged misrepresentations, that he was aware of statements by others that he knew they were false or omitted material information, or that he had the power or authority to issue or correct such statements. The FAC makes clear, Mr. Smith was a technical employee, a developer, and is not alleged to have ever made a representation on Safemoon's behalf.

B.   The FAC Does Not Properly Allege Scheme Liability Against Mr. Smith

Plaintiffs also assert a Section 10(b) scheme liability claim (Claim II), alleging that "Defendants" engaged in a purported fraudulent scheme whereby the Company (*not* Mr. Smith individually) paid the Promoter Defendants to promote Safemoon Tokens, the Company and the Executive Defendants "re-tweeted" the promotions without disclosing that the Promoter Defendants had been paid to promote, the promotions artificially inflated the price of the Safemoon

---

dismissed because the securities laws do not apply outside the United States (Section IV.A) and that Plaintiffs have failed to plead reliance (Section IV.B), as required. *See* Safemoon Motion at 6–9.

Tokens, and the Executive Defendants and Promoter Defendants sold their Safemoon Tokens at inflated prices. FAC ¶ 465. But, to establish scheme liability against Mr. Smith, Plaintiffs must allege *particularized facts* showing: (1) a manipulative or deceptive act by Mr. Smith in furtherance of a scheme to deceive or defraud; (2) scienter; (3) a connection between the manipulative or deceptive act and the purchase or sale of a security; (4) reliance on the defendant's manipulative or deceptive act; (5) economic loss; and (6) loss causation. *Smith v. LifeVantage Corp.*, 341 F.R.D. 82, 98 (D. Utah 2022). None of these elements are met as to Mr. Smith.

1. *Plaintiffs Do Not Allege that Mr. Smith Committed a Deceptive or Manipulative Act in Furtherance of an Alleged Scheme to Defraud*

Plaintiffs fail to allege particularized facts, as required, showing that Mr. Smith personally committed a deceptive act in furtherance of the purported scheme by engaging in conduct that had the principal purpose or effect of creating a false appearance of fact. *See Smith v. LifeVantage Corp.*, 429 F. Supp. 3d 1275, 1284 (D. Utah 2019); *Borteanu v. Nikola Corp.*, No. 20-01797, 2023 WL 1472852, at *22 (D. Ariz. Feb. 2, 2023) (unpublished) ("It is not enough that a transaction in which a defendant was involved had a deceptive purpose and effect; the defendant's own conduct contributing to the transaction or overall scheme must have had a deceptive purpose and effect."). Lacking any personalized facts regarding Mr. Smith, Plaintiffs assert conclusory allegations and resort to improper group pleading.

In alleging purported violations of Section 10(b), the FAC repeatedly attributes conduct to the "Company" or the "Executive Defendants". *See, e.g.*, FAC ¶¶ 434–36, 438–440, 442, 444, 455, and 466–71. But such allegations say next to nothing about Mr. Smith, a technical employee with purported responsibility to develop the Safemoon technology. *See* FAC ¶ 49.

Moreover, Plaintiffs' bald assertions that "[all] Defendants disseminated, approved, and/or endorsed" false statements, FAC ¶ 464, and that "the Executive Defendants 're-tweeted' or otherwise broadcasted the Promoter Defendants' promotions of SAFEMOON Tokens," FAC ¶ 466, are insufficient because they do not demonstrate that the "re-tweeted" statements were false, that Mr. Smith knew they were false, or that Mr. Smith otherwise committed a deceptive act. *See Borteanu*, 2023 WL 1472852, at *23 (rejecting as "entirely conclusory" scheme allegations that lumped all defendants together and were "unsupported by any factual allegations").

Finally, Plaintiffs' conclusory allegation that "Executive Defendants" sold their Safemoon Tokens at inflated prices, FAC ¶ 465, likewise improperly relies on group pleading. *See TDC Lending*, 340 F. Supp. 3d at 1227. And conclusory allegations that Mr. Smith used wallets to "fraudulently transfer and/or sell SAFEMOON Tokens during the Relevant Period," FAC ¶ 57, do not suffice. Selling one's property, if it occurred, does not constitute a scheme or deceptive act merely because Plaintiffs attempt to label it fraudulent. Notably, allegations regarding sales by Mr. Smith are pled "upon information and belief", which is plainly insufficient under the PSLRA and Rule 9(b). *See Walker v. Hickenlooper*, 627 F. App'x 710, 715 (10th Cir. 2015) (allegations based on information and belief, without supporting factual assertions, are insufficient to state a valid claim regarding a defendant's alleged action).

### 2. *Plaintiffs Do Not Adequately Allege Particularized Facts Creating a Strong Inference that Mr. Smith Acted with Scienter*

Plaintiffs also fail to "state with particularity facts giving rise to a strong inference that [Mr. Smith] acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), *i.e.*, with scienter, a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 313, 319 (recognizing risk that private securities fraud actions "can be employed abusively to impose

substantial costs on companies and individuals whose conduct conforms to the law"). It "does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the required state of mind." *Id*. at 314. Rather, the PSLRA's "exacting pleading requirements" require that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 313–14. The FAC does not meet this stringent standard as to Mr. Smith.

Plaintiffs assert that "[t]he Company" and "Executive Defendants" acted with scienter because "they necessarily knew that: (i) the Promoter Defendants received consideration for their social-media promotions …; (ii) such promotions did not reflect the sincere beliefs of the Promoter Defendants; and (iii) they sold SAFEMOON Tokens in the period of and immediately following such promotions." FAC ¶ 471. The inferences Plaintiffs seek to draw are not reasonable and even if they came close, group pleading like this does not suffice to plead scienter as to Mr. Smith. *See, e.g.*, *TDC Lending*, 340 F. Supp. 3d at 1227 (group pleading is not sufficient to allege scienter for securities fraud); *Zhang v. LifeVantage Corp.*, No. 16-965, 2017 WL 2599883, at *10 (D. Utah June 15, 2017) (unpublished) ("[T]he PSLRA demands that the facts giving rise to the necessary inference of scienter be pled with particularity as to each defendant."). Indeed, the FAC does not allege that Mr. Smith, a technical employee, had any contact with the Promoter Defendants concerning their public statements, that Mr. Smith knew what any promoter was saying, that he knew they were being paid to promote Safemoon, or that he knew any particular statement did not reflect the promoter's sincerely held beliefs. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1245–46 (10th Cir. 2016) ("We cannot infer scienter based only on a defendant's

position in a company or involvement with a particular project;" rather, "additional detailed allegations about the defendant['s] actual exposure to information" is required.).

Likewise, the FAC's allegations that "Executive Defendants" sold tokens improperly relies on group pleading and does nothing to establish an inference of scienter on Mr. Smith's part. *TDC Lending*, 340 F. Supp. 3d at 1227. Nor do bare allegations that Mr. Smith "transferred" or "sold" Safemoon Tokens, even if true, create a strong inference of scienter. To do so, courts must consider, among other things "the amount of profit from the sales" and "the portion of []holdings sold." *Smallen v. The Western Union Co.*, 950 F.3d 1297, 1310 (10th Cir. 2020). The Court cannot make that determination here because Plaintiffs do not allege a single well-pled ***fact*** (as opposed to bare conclusions) showing that Mr. Smith sold any tokens at all—let alone when the alleged sales took place, in what amount, and for what price. FAC ¶ 257. Because Plaintiffs fail to plead any deceptive acts by Mr. Smith or a strong inference of scienter with the requisite particularity, Plaintiffs' Section 10(b) scheme liability claim fails.

## II.  Plaintiffs' Claim Under Section 12(a) Must Be Dismissed

Plaintiffs' claim under Section 12(a) (Claim III) also fails as to Mr. Smith because Plaintiffs have not (and cannot) allege that Mr. Smith is a statutory seller or that he directly solicited Plaintiffs' Safemoon Token purchases.[5] The Supreme Court has made it clear that Section 12 claims include a privity requirement and that liability can only be imposed on the buyer's (i.e., plaintiff's) immediate seller or a defendant who directly solicited Plaintiffs' Token purchases. Plaintiffs have not alleged that Mr. Smith was their immediate seller.

---

[5] The Safemoon Defendants address these arguments at length. *See* Safemoon Motion at 9–13. *See also* Nagy Motion at 12-14; Wyatt Motion to Dismiss at 23. Pursuant to DUCivR7-1(a)(7), Mr. Smith refers to and incorporates these arguments, as well.

Instead, Plaintiffs apparently intend to rely on a theory that Mr. Smith solicited Plaintiffs' purchases of the Safemoon Token. But the allegations in the FAC are insufficient to do so. As in many other areas of the FAC, Plaintiffs attempt to satisfy the solicitation requirement of Section 12 using conclusory allegations and improper group pleading. Specifically, Plaintiffs allege, without authority or basis, that "Defendants are all statutory sellers," FAC ¶ 479, and that "Plaintiffs saw the solicitations from Executive Defendants … and they purchased Safemoon tokens as a result of those promotions," *id.* FAC ¶ 480. These allegations are conclusory and insufficient as to Mr. Smith because they do not include or allege any specific facts demonstrating that Mr. Smith had direct and active participation in the solicitation of any sale to the named Plaintiffs.

As discussed above, the allegations related to alleged "marketing" by Mr. Smith are limited to allegations that Mr. Smith introduced an investor who wanted to moderate the Company's Discord account to the Community's Community Manager, FAC ¶ 152, that Smith welcomed another person to the Company, FAC ¶ 154, that Smith "republished" a post by Jake Paul, FAC ¶ 157, "promoted" tweets by Parks McCollum, FAC ¶ 160–61, re-tweeted a tweet by Defendant Keem, FAC ¶ 165, and reposted a tweet by Arriaga, FAC ¶ 295. The FAC also alleges that Smith tweeted saying "THE SHOW GOES ON," "I'm not leaving," and "Bullish on the team, I love working @safemoon." FAC ¶¶ 311, 313.

These allegations are not sufficient, nor are any other references to Mr. Smith in the FAC. First, Mr. Smith's alleged involvement in introducing an investor who wanted to moderate the Company's Discord account is not solicitation. Second, it is not sufficient for Plaintiffs to allege that Mr. Smith "republished," "promoted," "re-tweeted," or "re-posted" comments by others

without specific facts such as the dates of the posts, when and how any particular named Plaintiff received such post, whether that Plaintiff particularly relied on the actual re-tweet or re-post of Mr. Smith (rather than the original poster), and whether Mr. Smith targeted Plaintiffs. None of this information is provided and Plaintiffs' conclusory allegations do not demonstrate Mr. Smith's active involvement in direct solicitation of Plaintiffs. As a result, the FAC's claim under Section 12 is insufficient as a matter of law and must be dismissed.

Moreover, even if Mr. Smith were somehow a proper defendant to a Section 12 claim, the Section 12 claim is substantively flawed and must be dismissed because the transactions at issue did not have to be registered under Section 5 of the Securities Act (a necessary predicate to a Section 12 claim). Because registration is a requirement that applies to "an issuer, underwriter, or dealer", but not transactions between ordinary investors, Plaintiffs are required to allege the source of the Tokens they allegedly purchased. Plaintiffs have not done so. Plaintiffs' Section 12 claim must be dismissed for this reason as well.[6]

### III. Plaintiffs' Control Person Claims (Claims IV and V) Do Not Adequately Plead Control Person Liability as to Mr. Smith

Plaintiffs' "control person" claims against Mr. Smith under Section 20(a) of the Exchange Act and Section 15 of the Securities Act are also deficient. To state a "control person" claim, Plaintiffs must allege: (1) a primary violation of federal securities laws, and (2) that Mr. Smith had "control" over the primary violator. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998). Here, the "control person" claims necessarily fail because Plaintiffs fail to plead an

---

[6] Mr. Smith also hereby joins the additional arguments raised in the Wyatt Motion, that "Plaintiffs are not entitled to relief on their section 12 claim because they still hold their Safemoon Tokens," *id.* at 23, that Plaintiffs were not solicited by Defendants and have provided no allegations of such to that effect, *id.* at 10, and that proper documentation of transfer has not been proven, *id.* at 13.

underlying violation of either the Exchange Act or Securities Act. *See* Sections I, II, *supra*. But even if Plaintiffs could allege underlying violations, nothing in the FAC suggests that Mr. Smith had "control" over a primary violator. The FAC alleges that Mr. Smith was the Chief Blockchain Officer, FAC ¶ 20, a technical position. Plaintiffs' conclusory allegation that the "Executive Defendants" were control persons "by virtue of their offices, ownership, agency, agreements or understandings," FAC ¶¶ 485, 493, is insufficient. *See Maher*, 144 F.3d at 1306 (dismissal of control person claim where plaintiff "does not plead any facts from which it can reasonably be inferred the defendant was a control person"); *Solid Q Holdings, LLC v. Arenal Energy Corp.*, No. 15-00419, 2017 WL 782283, at *3 (D. Utah Feb. 28, 2017) (unpublished) (mere allegation that defendant was a "high-level officer" insufficient to establish control).

## IV. Plaintiffs' RICO Claims Are Improper and Must Be Dismissed

### A. Plaintiffs' RICO Claim is Pre-Empted by the PSLRA

Plaintiffs' RICO claim must be dismissed because the PSLRA preempts a RICO claim when the plaintiff alleges federal securities law claims. *See* 18 U.S.C. § 1964(c); *Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010); *Boulware v. Baldwin*, No. 11-762, 2012 WL 1412698, at *12 (D. Utah Apr. 23, 2012) (unpublished) (dismissing RICO claim as barred by the PSLRA).

### B. Plaintiffs Lack Standing to Bring a RICO Claim

Plaintiffs' RICO claim should also be dismissed because Plaintiffs lack standing to bring a RICO claim. To establish standing to sue under RICO, Plaintiffs must plead that (1) their purported harm qualifies as an injury to business or property; and (2) the harm was "by reason of" Mr. Smith's commission of enumerated "predicate acts" under RICO—meaning Plaintiffs must

satisfy but-for and proximate causation. 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Plaintiffs cannot establish either element.

The only loss alleged by Plaintiffs is the loss of an expectancy interest in the value of Safemoon Tokens allegedly purchased by them. However, "[i]njury to mere expectancy interests … is not sufficient to confer RICO standing." *Price v. Pinnacle Brand, Inc,* 138 F.3d 602, 607 (5th Cir. 1998). Specifically, Plaintiffs assert that they were harmed because they paid inflated prices for Safemoon Tokens. FAC ¶¶ 555–58). Such harm is a prime example of an expectancy interest that does not qualify as a harm to business or property for purposes of conferring standing to bring a RICO claim. Plaintiffs bargained for a certain number of Safemoon Tokens at their then-market value, and that's exactly what they got. Plaintiffs could have sold their Safemoon Tokens for a higher price during the Relevant Period, but "Plaintiffs' disappointment that they did not sell their Tokens before the market plummeted was an inherent risk of the bargain" and does not suffice to confer RICO standing. *In Re Ethereummax Inv. Litig.*, No. 22-00163, 2022 U.S. Dist. LEXIS 220968, at *38 (C.D. Cal. Dec. 6, 2022) (unpublished).

The FAC also fails to allege that Mr. Smith's purported RICO activity caused Plaintiffs' injury. The FAC is devoid of any allegation that Mr. Smith engaged in any deceptive conduct or that this conduct proximately caused Plaintiffs' losses.[7] Plaintiffs' RICO claim should be dismissed for this reason as well.

---

[7] Pursuant to DUCivR7-1(a)(7), Mr. Smith incorporates and joins the arguments in the Naggy Motion that Plaintiffs have not adequately pled the substantive elements of a RICO claim, and specifically that Plaintiffs have failed to plead a sufficient RICO enterprise or that Mr. Smith participated in that enterprise. *See id.* at 17–21.

Page 15

## V. Plaintiffs' Claim Against Mr. Smith Under the Florida Deceptive and Unfair Trade Practices Act Must Be Dismissed

Plaintiffs' claim under FDUTPA against Mr. Smith (Claim XII) fares no better than their other claims. *See* FAC ¶¶ 566–82. As a threshold matter, where – as here – a plaintiff purports to assert federal securities law violations, any FDUTPA claim is barred. *See Feng v. Walsh*, No. 19-24138, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021) (unpublished) (FDUTPA does not apply where securities fraud claims are asserted).

Even if the FDUTPA claim was not barred, Plaintiffs fail to specifically plead the required elements of a FDUTPA claim, including: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 07-2093, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008) (unpublished) (FDUTPA claims must be "pled with particularity").

As with the defective securities fraud claims, Plaintiffs fail to plead with particularity any actionable deceptive statements or actions by Mr. Smith. *See D.H.G. Properties, LLC v. Ginn Companies, LLC*, No. 09-735, 2010 WL 5584464, at *5–7 (M.D. Fla. Sept. 28, 2010) (unpublished) (dismissing FDUTPA claim under Rule 9(b) where complaint set forth a "theory regarding the overall fraudulent scheme" but was "devoid of any specificity as to [defendant's] fraudulent actions") (emphasis in original). Any statements Mr. Smith purportedly made are not alleged to have been false or misleading, and in any event are non-actionable puffery. *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1341 (S.D. Fla. 2012) (dismissing FDUTPA claims based on puffery). And as discussed, Plaintiffs have presented no particularized allegations that Mr. Smith engaged in any deceptive conduct.

Plaintiffs' "omissions" theory is similarly unavailing. Plaintiffs allege that "Defendants" failed to disclose: (a) the "Executive Defendants' specific roles and ownership interests in Safemoon;" (b) the purported fraudulent scheme; (c) that "the V1 to V2 Migration would likely result in the total loss of the investors' SAFEMOON Tokens"; and (d) "that the Company was not using a mechanism to lock funds in the liquidity pools." FAC ¶ 573. Plaintiffs do not explain why a reasonable consumer would care about the "specific roles and ownership interests," FAC ¶ 573(a), held by Mr. Smith or any of the other Executive Defendants. *See Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, No. 17-81100, 2018 WL 1072211, at *7–8 (S.D. Fla. Feb. 27, 2018) (unpublished) (dismissing FDUTPA claim where "a consumer acting reasonably under the circumstances would not have been misled by the omission"). With respect to the alleged failure to disclose the purported fraudulent scheme, FAC ¶ 573(b), and issues with the V1-V2 migration, FAC ¶ 573(c), there are no well-pled factual allegations that Mr. Smith participated in any fraudulent scheme, and no allegations that Mr. Smith was involved in the V1-V2 migration, *see* FAC ¶¶ 324–46. Indeed, Mr. Smith left Safemoon in November 2021, FAC ¶ 313, before the alleged V1-V2 migration in December 2021. And, with respect to the alleged unlocked liquidity pools—that allegation is based solely on videos posted on an unspecified "YouTube channel" which Plaintiffs tellingly fail to link.

Finally, Plaintiffs' bare allegation that they purchased Safemoon Tokens "during the Relevant Period," FAC ¶¶ 6–8, are not sufficient to sustain their FDUTPA claim. FDUTPA applies only to acts committed in Florida and courts have consistently dismissed FDUTPA claims where the alleged unlawful practice or deceptive conduct occurred outside Florida. *See Friedman v. Dollar Thrifty Auto. Group, Inc.,* No. 12-02432, 2013 WL 5448078, at *6–7 (D. Colo. Sept. 27,

2013) (unpublished) (FDUTPA cannot apply to transactions that occur entirely outside of Florida);

*accord Nieman v. Dryclean U.S.A. Franchise Co.*, 178 F.3d 1126, 1128 n.3 (11th Cir. 1999). One

Plaintiff's citizenship in Florida, FAC ¶¶ 6, 567, is insufficient to invoke FDUTPA. Rather,

Plaintiffs must plead that the allegedly deceptive practice occurred in Florida. *See Sallee v. Dollar*

*Thrifty Auto. Grp., Inc.*, No. 14-250, 2015 WL 1281518, at *8 (N.D. Okla. Mar. 20, 2015)

(unpublished) (granting motion to dismiss FDUTPA claim where transaction at issue occurred in

Texas). There are no such allegations in the FAC. For these reasons, the FDUTPA claim against

Mr. Smith fails to meet the heightened pleading standard under Rule 9(b) and must be dismissed.

## VI. Plaintiffs' Claims for Conspiracy, Unjust Enrichment, and Restitution Are Improper and Must Be Dismissed[8]

### A. Plaintiffs' General Allegations of Conspiracy Fail to Identify the State Law That Applies or to Satisfy the Elements of Conspiracy Under Utah Law

Plaintiffs assert a claim styled "conspiracy". *See* FAC Claim XI. However, Plaintiffs fail

to cite any authority for the cause of action or to allege what law applies to this purported claim.

This alone warrants dismissal of the cause of action. *See, e.g.*, *In re TFT-LCD (Flat Panel)*

*Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011).

Plaintiffs otherwise fail to plead the elements of conspiracy under Utah state law.[9] To state

a conspiracy claim, Plaintiffs must allege "(1) a combination of two or more persons, (2) an object

---

[8] As noted in the Wyatt Motion at 24–25, the Nagy Motion at 25 n. 19, and the Safemoon Motion at 21—which arguments on this point are incorporated herein pursuant to DUCivR 7-1(a)(7)—upon dismissal of the federal claims, the Court should decline to exercise pendent jurisdiction over the state claims. *Foxfield Villa Associates, LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020).

[9] In this regard Plaintiffs also fail to plead the elements of conspiracy under California, Florida, or Pennsylvania law as well. Each of these states requires as an element of civil conspiracy some connection to an unlawful or tortious act. *See e.g.*, *City of Industry v. City of Fillmore*, 198 Cal.

to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Fidelity Nat'l Title Ins. Co v. Worthington*, 344 P.3d 156, 160 (Utah Ct. App. 2015). Plaintiffs' allegations must satisfy Rule 9(b) because the underlying claim is grounded in fraud. *GeoMetWatch*, 2017 WL 1136946, at *17. "[C]onjecture and speculation alone are not sufficient to establish that the conspiracy existed." *Cannon v. PNC Bank, N.A.*, No. 15-00131, 2016 WL 9779290, at *7 (D. Utah Aug. 31, 2016) (unpublished). Moreover, "[t]he claim of civil conspiracy requires, as one of its essential elements, an underlying tort. In order to sufficiently plead a claim for civil conspiracy, a plaintiff is obligated to adequately plead the existence of such a tort. Where a plaintiff has not adequately pleaded any of the basic torts they allege[,] dismissal of the civil conspiracy claim is appropriate." *Rain Int'l, LLC v. Cook*, No. 2:20-CV-00537-JNP-DBP, 2023 WL 1954526, at *4 (D. Utah Feb. 10, 2023) (slip copy) (internal citations, quotations, and alterations omitted).

Assuming the claim is brought under Utah law, Plaintiffs have failed to adequately plead the elements of a conspiracy claim. The FAC does not allege particularized facts about what supposed combination of individuals agreed, when they agreed, whether there was a meeting of the minds on a specific course of action, what unlawful acts were committed and when, or whether the specific actions proximately caused any of the Plaintiff's purported damages. In fact, based on the bare allegations, there appears to be an absence of any underlying tort supporting the conspiracy claim at all.

---

App. 4th 191, 212 (Cal. App. 2 Dist. 2011); *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006); *DeBlasio v. Pignoli*, 918 A.2d 822, 826 (Pa. Commw. Ct. 2007). Thus, as explained in the motion's body, for the same reason Plaintiffs fail to allege conspiracy under Utah law, they also fail to allege conspiracy under the laws of each of their respective domiciles as well.

Assuming Plaintiffs' references to "misleading" in their claim for conspiracy, *see, e.g.*, FAC ¶¶ 562–63, are meant to tie the conspiracy to some type of fraud, Plaintiffs conspiracy claim is deficient. "[W]here the unlawful act underlying the civil conspiracy is a fraud-based tort, both the underlying tort and the conspiracy claim must be pleaded with particularity." *Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, 2008 WL 4642975, at *9 (D. Utah 2008). Not only have plaintiffs failed to satisfy any notion of particularity under the rules, as it relates to some type of fraudulent misrepresentation—notably Mr. Smith is not personally alleged to have made any misrepresentation underlying *any* of the claims, *see* FAC ¶ 434, but he is also entirely absent by name from any of the allegations raised as part of the conspiracy cause of action, *see* FAC ¶¶ 561–65.

Plaintiffs also do not plead facts plausibly showing that Mr. Smith, *individually*, "agreed on a course of fraudulent behavior" with the other Defendants, let alone the details of those fraudulent behaviors, or that he, *individually*, satisfied any of the elements of the cause of action. *Fidelity Nat. Title*, 344 P.3d at 161 (finding that because the complaint failed to demonstrate that defendants "agreed on a course of fraudulent behavior, [plaintiff] failed to plead civil conspiracy to commit fraud with the particularity required by rule 9(b)"). Plaintiff has thus failed to meet the standard for particularly pleading the elements of conspiracy.

For all these reasons, the civil conspiracy claim against Mr. Smith should be dismissed.

B. <u>Plaintiffs Do Not Adequately Plead Unjust Enrichment or Restitution Claims Against Mr. Smith</u>

Plaintiffs assert a claim for unjust enrichment/restitution, apparently under California law, asserting that Mr. Smith was unjustly enriched at Plaintiffs' expense and as a result of the alleged fraudulent scheme. FAC ¶¶ 583–87. "California law does not recognize a cause of action for unjust

enrichment, so long as another cause of action is available that permits restitutionary damages." *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012). Because at least one other claim provides for restitution, *see, e.g.,* FAC ¶ 581, the Court should dismiss the unjust enrichment claim with prejudice as a matter of law.

Plaintiffs also fail to allege unjust enrichment with the requisite particularity. Under California law, unjust enrichment requires factual allegations that the defendant received a benefit that was unjustly retained at the plaintiff's expense and that the benefit was conferred on the defendant through mistake, fraud or coercion. *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 711 (N.D. Cal. 2009). Here, once again, because Plaintiffs do not adequately allege any underlying fraud, Plaintiffs' unjust enrichment claim necessarily fails. *Mangindin*, 637 F. Supp. 2d at 711. Nor does Plaintiffs' conclusory allegation that a benefit was conferred "on Defendants when they sold their SAFEMOON Tokens to Plaintiff and Class members," FAC ¶ 585, suffice to establish that Mr. Smith sold tokens to Plaintiffs, class members, or at all.

## CONCLUSION

For the reasons discussed above, Mr. Smith requests that the Court dismiss Plaintiffs' First Amended Complaint. Because amendment would be futile, such dismissal should be with prejudice.

DATED this 23rd day of May 2023.

KUNZLER BEAN & ADAMSON, PC


*/s/ Matthew R. Lewis*
Matthew R. Lewis
Taylor J. Smith

*Attorneys for Defendant Thomas Smith*

Page 21

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of May 2023, I filed a true and correct copy of the foregoing **DEFENDANT THOMAS SMITH'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** via the Court's electronic filing system, which automatically effectuated service on all parties of record.

*/s/ Andrea Coats*
Andrea Coats