John T. Jasnoch (admitted *pro hac vice*)
jjasnoch@scott-scott.com
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508

*Lead Counsel for Plaintiffs*

(Additional Counsel on Signature Page)

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MARK COMBS, VLAD IACOB, and BENJAMIN NORTHEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEMOON LLC, SAFEMOON US, LLC, SAFEMOON CONNECT, LLC, TANO LLC, SAFEMOON LTD, SAFEMOON PROTOCOL LTD, SAFEMOON MEDIA GROUP LTD, BRADEN JOHN KARONY, JACK HAINES-DAVIES, HENRY "HANK" WYATT, JAKE PAUL, KYLE NAGY, DeANDRE CORTEZ WAY, BEN PHILLIPS, MILES PARKS McCOLLUM, THOMAS SMITH and DANIEL M. KEEM,<br><br>Defendants | **LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Case No. 2:22-cv-00642-DBB-JCB<br><br><br>Assigned Judge: Hon. David Barlow<br>Referred Magistrate Judge: Jared C. Bennett |

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   RELEVANT BACKGROUND .........................................................................4

    A.    The Commencement and Nature of the Action ......................................4

    B.    The DOJ Indictment and SEC Complaint.............................................5

    C.    The Chapter 7 Proceeding......................................................................6

    D.    The Mediation/Settlement Process ........................................................6

    E.    Settlement Proceedings in the Bankruptcy Court ..................................7

III.  SUMMARY OF THE SETTLEMENT ...........................................................8

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...........11

    A.    The Standards for Preliminary Approval of a Proposed Settlement....................11

    B.    The Settlement Satisfies Each of the Rule 23(e)(2) Factors .................13

        1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class.................................................................13

        2.    The Proposed Settlement Was Negotiated at Arm's-Length.......................16

        3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal......................................18

        4.    The Proposed Method for Distributing Relief Is Effective..........................20

        5.    Lead Counsel's Maximum Potential Requested Attorneys' Fees and Expenses Are Reasonable and in Line with Similar Recent Cases ..............20

        6.    The Parties Have No Side Agreements.................................................21

        7.    Class Members Are Treated Equitably ........................................................21

V.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED..........22

VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS .............................23

VII.  CONCLUSION.................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
No. 5:20-cv-06936 (N.D. Cal.) ...............................................................................15

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
551 F.2d 804 (10th Cir. 1977) ...............................................................................11

*Blanco v. Xtreme Drilling & Coil Servs.*,
2020 U.S. Dist. LEXIS 121996 (D. Colo. Mar. 8, 2020) .......................................12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).....................................................................................19

*Cotte v. CVI SGP Acquisition Tr.*,
2023 WL 1472428 (D. Utah Feb. 2, 2023) ........................................................14, 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................................22

*Gelt Trading Ltd. v. Co-Diagnostics, Inc.*,
2023 WL 5334623 (D. Utah Aug. 18, 2023) ...........................................................14

*Giles v. The Inflatable Store, Inc.*,
2009 WL 801729 (D. Colo. Mar. 24, 2009) .............................................................11

*Gradie v. C.R. Eng., Inc.*,
2020 U.S. Dist. LEXIS 218287 (D. Utah Nov. 20, 2020) .......................................18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................19

*In re Conn's, Inc. Sec. Litig.*,
No. 4:14-cv-00548 (S.D. Tex.) ................................................................................15

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ..............................................................................17

*In re Crocs, Inc. Sec. Litig. ("Crocs I")*,
2013 WL 4547404 (D. Colo. Aug. 28, 2013) .....................................................12, 18

*In re Molycorp, Inc. Sec. Litig.*,
2017 U.S. Dist. LEXIS 215174 (D. Colo. Feb. 15, 2017) ..................................16, 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................17

*In re Samsung Top-load Washing Mach. Mktg., Sales Prod. Liab. Litig.*,
   2020 U.S. Dist. LEXIS 90759 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d
   1077 (10th Cir. 2021)........................................................................................16

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) ...............................................................21

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ..................................................................12, 16

*Martinez v. Reams*,
   2020 WL 7319081 (D. Colo. Dec. 11, 2020)....................................................14

*O'Dowd v. Anthem, Inc.*,
   2019 U.S. Dist. LEXIS 153610 (D. Utah Sept. 9, 2019)..............................12, 17

*Or. Labs. Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
   2024 WL 98387 (D. Colo. Jan. 1, 2024).......................................................11, 22

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc*.,
   2021 WL 1387110 (D. Colo. Apr. 13, 2021).....................................................14

*Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*,
   2021 WL 2981970 (D. Colo. July 15, 2021) .....................................................20

*Rutter & Wilbanks Corp. v. Shell Oil Co*.,
   314 F.3d 1180 (10th Cir. 2002) ........................................................................13

*Tennille v. Western Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ..........................................................................22

*Tuten v. United Airlines, Inc.*,
   41 F. Supp. 3d 1003 (D. Colo. 2014).................................................................11

*Voulgaris v. Array Biopharma, Inc*.,
   60 F.4th 1259 (10th Cir. 2023) .........................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................23

**Statutes, Rules, and Regulations**

11 U. S. Code

§105..............................................................................................................................7

§362 ..................................................................................................................6

15 U. S. Code

§78u-4(a)(4) .....................................................................................................21

§78u4(a)(3)(B)(iii)(I)(cc) .................................................................................14

Federal Rules of Civil Procedure .............................................................. *passim*

Rule 23(a)(4) ....................................................................................................14

Rule 23(c)(2) ....................................................................................................22

Rule 23(e)(1) ....................................................................................................12

Rule 23(e)(2)(C)(ii) ..........................................................................................20

Rule 23(e)(2)(C)(iii) .........................................................................................20

Rule 23(e)(2)(C)(iv) ..........................................................................................21

Rule 23(e)(2)(D) ...............................................................................................21

Federal Rules of Bankruptcy Procedure

Rule 7023 ...........................................................................................................7

Rule 9014(c) .......................................................................................................6

Rule 9019 ...........................................................................................................7

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11:53 (4th ed. 2002) ...........................................................................................................23

Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2024 Review & Analysis* ............................................................................................................16

**RELIEF REQUESTED**

Lead Plaintiffs Mark Combs, Vlad Iacob, and Benjamin Northey ("Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class, through Court-appointed Lead Counsel, Scott+Scott Attorneys at Law LLP, respectfully move this Court for an Order, pursuant to Federal Rule of Civil Procedure 23: (i) preliminarily approving a proposed settlement (the "Settlement") of the above-captioned action between Lead Plaintiffs, on behalf of themselves and the Class, as defined below, and Ellen E. Ostrow, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of SafeMoon US, LLC ("SafeMoon" or the "Debtor Defendant"), (ii) approving the form and manner of providing notice of the proposed Settlement to the Settlement Class, including the procedures and deadlines for objecting, seeking exclusion from the Settlement Class, and submitting Claim Forms; (iii) scheduling a date for a hearing (the "Settlement Fairness Hearing") to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed plan of allocation for the Settlement proceeds (the "Plan of Allocation"), Lead Counsel's application for an award of attorneys' fees and expenses, and Lead Plaintiffs' request for an award for the time and expenses they incurred prosecuting the above-captioned action; (iv) appointing Stretto, Inc. as the Claims Administrator to administer the Settlement; and (v) granting such other and further relief as the Court may deem fair and proper.

## I.    INTRODUCTION

Lead Plaintiffs, on behalf of the Class, and the Trustee for the Debtor Defendant (together, the "Parties") have reached a global resolution to resolve this securities class action as well as related claims in the Debtor Defendant's Chapter 7 proceeding (the "Action") for an estimated initial payment of $12,000,000 (the "Estimated Initial Settlement Amount") into

1

the Settlement Fund for the benefit of Class Members. In addition, depending on the outcome of additional legal proceedings and recovery actions in the Debtor Defendant's Chapter 7 proceeding in the Bankruptcy Court, there is a possibility of a subsequent payment into the Settlement Fund. The Settlement's terms are set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), filed simultaneously herewith.[1]

The Settlement is also the product of extensive arm's-length negotiations between the Settling Parties, which included a court ordered settlement conference with Chief Magistrate Judge, the Honorable Dustin Pead. Prior to settlement, Lead Counsel undertook an extensive investigation before the filing of the initial and amended complaints in this action. Among other things, Lead Counsel's investigation included: (a) an extensive factual investigation of the events underlying SafeMoon's rise and subsequent bankruptcy; (b) reviewing and analyzing the representations made by SafeMoon and its principals on social media; (c) reviewing and analyzing industry reports and comprehensive news reports, press releases, and other media files concerning SafeMoon; (d) thoroughly reviewing publicly filed documents in *In re Safemoon US, LLC*, Case No. 2:23-25749 (Bankr. D. Utah); (e) reviewing complaints and filings in *USA v. Karony,* Case No. 1:23-cr-00433 (E.D.N.Y.) and *Securities and Exchange Commission v. SafeMoon LLC*, Case No. 1:23-cv-08138 (E.D.N.Y.); and (f) interviewing impacted investors as well as industry experts. The Parties reached this Settlement after the Debtor Defendant's motion to dismiss was fully briefed and an order issued as to the non-debtor Defendants. There can be no doubt that by the time the Settlement

---

[1]     Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation. The Stipulation is attached as Exhibit 1 to the Declaration of John T. Jasnoch in Support of Preliminary Approval, filed herewith.

was reached, Lead Counsel and Lead Plaintiffs were fully informed about the strengths and weaknesses of the case.

Lead Plaintiffs and Lead Counsel, based on their experience, evaluation of the facts and applicable law, their recognition of the near-term payment of the Estimated Initial Settlement Amount, and the risk and expense of continued litigation, submit that the proposed Settlement is fair, reasonable, and adequate. The Settlement constitutes an excellent result and is in the best interests of the Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.

Lead Plaintiffs request that this Court enter the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith as Exhibit A to the Stipulation, which, among other things, will: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation, respectively, in connection with the Proposed Settlement, as well as the processing of Proofs of Claim; (iii) find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and §21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) set a schedule and approve procedures for: disseminating the Notice and publication of the

Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation, Lead Counsel's application for attorneys' fees and expenses, and/or Lead Plaintiffs' request for an award for the time and expenses incurred prosecuting the Action; submitting papers in support of final approval of the Settlement; and the Settlement Fairness Hearing. Lead Plaintiffs respectfully propose the schedule for proceeding with final approval of the Settlement set forth in Section VI below.

## II.    RELEVANT BACKGROUND

### A. The Commencement and Nature of the Action

The Debtor Defendant, SafeMoon US, LLC, was a cryptocurrency and blockchain company based in Pleasant Grove, Utah that was created in March 2021. Concurrent with its inception, the Debtor created and sold a SafeMoon token ("SafeMoon Token" or "SFM Token") that trades on the BNB Smart Chain, Polygon, and Ethereum blockchains. The value of the SFM Token increased exponentially in its first month of existence, with the SafeMoon Token's market capitalization reaching billions of dollars in April 2021. Over time, however, allegations that the Debtor's principals made misrepresentations and engaged in other alleged misconduct led to a sharp reduction in the market price of the SFM Tokens.

This Securities Action was filed in the Central District of California on February 17, 2022 (the "California District Court"). On May 9, 2022, Lead Plaintiffs and Lead Counsel moved under the PSLRA to be appointed lead plaintiffs and lead counsel, and each Lead Plaintiff submitted a signed certification identifying their transactions in SafeMoon Tokens, and attesting to their willingness to represent the Proposed Class. By order dated June 7, 2022, the California District Court consolidated two related SafeMoon class actions determined (after the sixty-day PSLRA notice period for moving for appointment as the class representative had expired) that Lead Plaintiffs were the "most adequate plaintiffs" and appointed them as lead plaintiffs in the

consolidated Securities Action.  *See* ECF No. 52.  Pursuant to the Lead Plaintiff Order, the
California Federal Court (a) granted Lead Plaintiffs the authority to "represent the Class" in the
Securities Action and any subsequent "related actions"; and (b) appointed Scott+Scott Attorneys
at Law LLP ("Scott+Scott" or "Lead Counsel") as lead counsel in the Securities Action, with the
authority to "speak for all plaintiffs and Class members in all matters regarding the litigation,
including, but not limited to, pre-trial proceedings, motion practice, trial and settlement."  *Id.*

On October 5, 2022, the Securities Litigation was transferred to the District of Utah, and
was thereafter assigned to this Court.  On March 17, 2023, the operative Complaint was filed, the
First Amended Complaint (the "Complaint").  In May 2023, Defendants filed four separate
motions to dismiss.  *See* ECF Nos. 149-150; 152; 156.  In July 2023, Lead Plaintiffs filed their
opposition briefs.  ECF Nos. 165-168.

On March 29, 2024, the Court issued its omnibus order on the motions to dismiss in the
Securities Litigation.  The Court dismissed a number of claims without prejudice but found that
Lead Plaintiffs had adequately stated claims for violation of Section 12(a)(1) of the Securities Act
against the non-debtor SafeMoon entity Defendants as well as against Individual Defendants
Braden Karony ("Karony") and Thomas Smith.  The District Court also found that Lead Plaintiffs
have adequately stated a control person claim pursuant to Section 15 of the Securities Act against
Individual Defendant Karony.

### B.  The DOJ Indictment and SEC Complaint

On November 1, 2023, an indictment was unsealed in the Eastern District of New York
charging various individuals with fraud and conspiracy, including the Debtor Defendant's former
CEO, Karony.  *See USA v. Karony,* No. 1:23-cr-00433 (E.D.N.Y.).  The indictment closely tracked
the allegations asserted by Lead Plaintiffs in this Action, namely, that defendants had committed
securities fraud in connection with the SafeMoon entities and sale of SafeMoon Tokens.  Also on

November 1, 2023, the Securities and Exchange Commission ("SEC") filed a civil complaint against the Debtor Defendant and related persons and entities which also closely tracked the allegations here. *See S.E.C. v. SafeMoon LLC,* No. 1:23-cv-08138, ECF No. 1 (E.D.N.Y. Nov. 1, 2023).

On May 21, 2025, Karony was convicted of securities fraud conspiracy, wire fraud conspiracy, and money laundering conspiracy.

### C.  The Chapter 7 Proceeding

On December 14, 2023, the Debtor Defendant filed its Chapter 7 proceeding.  *See* Bankruptcy ECF No. 1.  Pursuant to the automatic stay pursuant to 11 U.S.C. §362, this Action was stayed as to the Debtor Defendant.  The Office of the United States Trustee appointed the Trustee as the chapter 7 trustee for the Debtor Defendant's estate.  The Trustee is a fiduciary for the creditors of the Debtor and has no relationship with the Debtor Defendant or its principals.

On June 11, 2024, Lead Plaintiffs filed a Motion for Order Certifying the Class for Purposes of the Class Claim Pursuant to Fed. R. Civ. P. 23 and Fed. R. Bankr. P. 7023 and 9014(c) (the "Class Claim Motion") asking the Bankruptcy Court to certify a class of SafeMoon investors for the purposes of pursuing a Class Proof of Claim against the Debtor.  Lead Plaintiffs further requested to be appointed as Class Representatives and appoint Lead Counsel as Class Counsel.

### D.  The Mediation/Settlement Process

In March of 2023, Lead Plaintiffs, the Debtor Defendant, and the other SafeMoon parties held a mediation with Robert Meyer, Esq. of JAMS.  The mediation was preceded by the submission of detailed mediation briefs outlining the parties' views on settlement and the merits of the case.  Although the mediating parties participated in the March 2023 mediation in good faith, the case did not settle, and active litigation continued.

Following the filing of the Class Claim Motion, on July 18, 2024, the District Court issued its Order Referring Contested Matter for Mediation (Bankruptcy ECF No. 203), and the hearing on Lead Plaintiffs' Class Claim Motion was continued.  On August 9, 2024, an order was issued setting the settlement conference for October 9, 2024 and a pre-settlement conference call for October 2, 2024.

On October 2, 2024, the Parties held their pre-settlement conference call with Judge Pead where progress was made toward settlement.  Judge Pead directed the parties to further meet and confer and rescheduled the settlement conference for October 16, 2024.  On October 9, 2024, the Lead Plaintiffs held a lengthy meet-and-confer teleconference with the Trustee, the Trustee's counsel, and the Trustee's advisors and additional progress was made toward settlement.  On October 16, 2024, the Settling Parties held their settlement conference with Judge Pead.  Following arm's-length negotiations through Judge Pead, the parties agreed to a global resolution of the Securities Action and the Class Claim Motion, subject to certain post-mediation conditions precedent to the Settlement.  The post-mediation conditions precedent to the Settlement have been satisfied, and this Settlement in this long running litigation is respectfully submitted for Court approval.

### E.  Settlement Proceedings in the Bankruptcy Court

On September 16, 2025, the long form Settlement was executed.  On September 17, 2025, the Trustee filed the Motion for an Order Pursuant to 11 U.S.C. § 105 and Rules 9019 and 7023 of the Federal Rules of Bankruptcy Procedure to Approve the Settlement Agreement (the "Motion to Approve").  Bankr. ECF No. 302 (attached as Exhibit 2).  On September 30, 2025, an objection was filed by class member Mike Suminski, the only class member who objected.  Bankr. ECF No. 305.  On October 6, 2025, Karony and his affiliated entities, Ronin Real Estate Holdings LC and Ronin Crypto Group LC filed an objection.  Bankr. ECF No. 308.  On October 7, 2025, the Trustee

filed a reply to the lone class member objection. Bankr. ECF No. 310. On November 12, 2025, the Trustee and Lead Plaintiffs filed separate replies to the Karony objection. Bankr. ECF Nos. 332 and 335 (attached as Exhibits 3 and 4 respectively).

On November 20, 2025, a hearing on the Motion to Approve was held in the Bankruptcy Court before the Honorable Peggy Hunt. *See* Bankr. ECF No. 344. On December 3, 2025, the Bankruptcy Court issued an order authorizing the Trustee to proceed with the Settlement in this Court. *See* Bankr. ECF No. 350 (attached as Exhibit 5).

## III.    SUMMARY OF THE SETTLEMENT

The proposed Settlement will result in the creation of an initial cash settlement fund consisting of an initial payment of an estimated Twelve Million dollars ($12,000,000) in cash (the "Settlement Fund"), which will be deposited in a separate, interest-bearing account. Depending on the outcome of additional legal proceedings and recovery actions in the Debtor Defendant's Chapter 7 proceeding in the Bankruptcy Court, there is a possibility of a subsequent payment into the Settlement Fund. All payments are non-reversionary. Stipulation, ¶1. In exchange for payment(s) into the Settlement Fund, the Action will be dismissed as to the Debtor Defendant, the Lead Plaintiffs' Class Claim Motion in the Bankruptcy Court will be resolved, and all Releasing Parties will release their claims. *Id.*, ¶5.

Further, the Plan of Allocation developed by the Trustee and its advisors, in consultation with Lead Counsel, allocates the proceeds of the Settlement—net of any Court-approved fees and expenses—in a *pro rata* fashion among the Settlement Class. *See id.*, ¶13; Ex. A-1 (Notice) at pg. 6. The recovery of individual Class Members under the Plan of Allocation will depend on several variables, including: the aggregate value of the Class Member's SafeMoon Token purchases, whether SafeMoon Tokens were sold, and if so, when, and how much was sold. *See id.* The Net

Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

The Notice, attached as Exhibit A-1 to the Stipulation, explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation (which is also included in the Notice). *See generally* Stipulation, Ex. A-1. The Notice also advises Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees and expenses and Lead Plaintiffs' requests for an award for the time and expenses they incurred prosecuting the Action; (ii) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses and Lead Plaintiffs' requested award; (iii) the means by which Class Members can exclude themselves from the Settlement; and (iv) the date, time, and location of the Settlement Fairness Hearing. *See id.*

If the Court grants preliminary approval, the proposed Claims Administrator[2] will serve: (i) the Notice of Pendency of Class Action and Proposed Settlement in substantially the same form attached to the Stipulation of Settlement (**Exhibit A-1**, the "Settlement Notice"); (ii) the Proof of Claim and Release (**Exhibit A-2,** the "Proof of Claim"); (iii) the Notice of Motion for Attorneys' Fees and Expenses; and (iv) Summary Notice, substantially in the form attached as **Exhibit A-3**, all of which are to be distributed by the Claims Administrator to known creditors on the creditor matrix and to other potential members of the Class via

---

[2]    The Settling Parties jointly propose that the Court appoint Stretto, Inc., as instructed by the Trustee, to serve as the Claims Administrator. Stretto is a well-known claims administrator with substantial experience in administering class action settlements and bankruptcies and is already handling claims in connection with the Debtor Defendant's Chapter 7 proceeding.

publication through social media channels, a dedicated settlement website, and on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block. Lead Counsel also agrees to publish the Summary Notice via a press release on a newswire service. *See* Stipulation, Ex. A (Preliminary Approval Order), ¶5(a).

As discussed below (at §IV.C.5), Lead Plaintiffs believe that the proposed Settlement, which is the result of an arm's-length negotiation through Judge Pead, represents a very favorable result for the Class because it provides a significant recovery, particularly when compared to the risks that continued litigation might result in a smaller recovery, or no recovery at all. While Lead Plaintiffs and Lead Counsel believe the claims asserted against the Debtor Defendants have merit, Lead Plaintiffs would have faced substantial challenges in establishing liability and damages on these novel claims and recovering on any substantial judgment. The Settlement will result in the creation of an initial cash settlement fund consisting of an initial payment of at least Twelve Million dollars ($12,000,000) in cash (the "Settlement Fund"), which will be deposited in a separate, interest-bearing account. Depending on the outcome of additional legal proceedings in the Bankruptcy Court, there is a possibility of a subsequent payment into the Settlement Fund. The roughly $12,000,000 recovery equals an excellent result in an action with a limited amount of funds in the Debtor Defendant's Chapter 7 proceeding that was subject to several competing claims.

Finally, Lead Plaintiffs faced substantial risks that, if the Action proceeded to trial, they would not be able to recover any substantial judgment obtained because the Debtor Defendant had limited assets to fund a settlement, and the recovered Chapter 7 funds have been diminished (and would continue to be rapidly depleted) by the costs of defending numerous related actions and investigations brought in the wake of SafeMoon's collapse. It

therefore provides a significant recovery for Class Members in a case where Lead Plaintiffs and Lead Counsel were well-positioned to assess the Action's strengths and weaknesses, including the potential limitations on damages and recovery, prior to agreeing to accept the proposed Settlement.

At this stage, the Court need not engage in a detailed analysis of the fairness of the Settlement, as that is reserved for the hearing on final approval, at which time interested Settlement Class Members and Lead Plaintiffs' and Settling Defendants' Counsel will be heard on the matter.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.  The Standards for Preliminary Approval of a Proposed Settlement

The Tenth Circuit has recognized that "the inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977) (citation modified); *see also Giles v. The Inflatable Store, Inc.*, 2009 WL 801729, at *5 (D. Colo. Mar. 24, 2009) ("The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation.") (citation modified).  This policy has even more force in complex class actions such as this one, "where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (citation modified); *see also Or. Labs. Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *4 (D. Colo. Jan. 1, 2024) ("The presumption in favor of voluntary settlement agreements is especially strong in class actions.") (citation modified).

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Review of a class action settlement is a two-step process.  The court first performs a preliminary review to determine whether notice should be sent to the class; and then, after notice is provided and a hearing set, the court makes a final determination as to whether the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  Strong judicial

and public policy favors settlements, particularly in the class and complex actions. *See, e.g.*, *O'Dowd v. Anthem, Inc.*, 2019 U.S. Dist. LEXIS 153610, at \*35 (D. Utah Sept. 9, 2019).  At this stage, Lead Plaintiffs seek preliminary approval of the Settlement, authorization of notice of the Settlement to be given to the Class, scheduling of the Settlement Fairness Hearing, and the granting of such other and further relief as the Court may deem fair and proper.  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also In re Crocs, Inc. Sec. Litig. ("Crocs I")*, 2013 WL 4547404, at \*3 (D. Colo. Aug. 28, 2013) ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.") (citation modified).

The present stage requires only that the Court find that the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *Blanco v. Xtreme Drilling & Coil Servs.*, 2020 U.S. Dist. LEXIS 121996, at \*3 (D. Colo. Mar. 8, 2020) (citation modified).  Pursuant to Rule 23(e)(1), at this stage, the issue is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule 23(e)(2) lists a set of factors that the Court must consider in determining whether the settlement is "fair, reasonable, and adequate":

    (A)    the Plaintiffs and Lead have adequately represented the class;

    (B)    the proposal was negotiated at arm's-length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of

payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

As explained below, Lead Plaintiffs respectfully submit that they have met all of the

requirements imposed by Rule 23(e)(2) and, therefore, respectfully request that the Court

grant preliminary approval.[3]

**B.    The Settlement Satisfies Each of the Rule 23(e)(2) Factors**

**1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the
Class**

In weighing approval, courts consider whether "the class representatives and class

counsel have adequately represented the class," which involves an inquiry into any conflicts

between Lead Plaintiffs and the Class and the ability of Lead Plaintiffs and Lead Counsel to

conduct the litigation.  Fed. R. Civ. P. 23(e)(2)(A); *see also Rutter*, 314 F.3d at 1187-88

("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their

counsel have any conflicts of interest with other class members and (2) will the named

---

[3]    In connection with final approval, the Court will also be asked to consider the Tenth
Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors:
"(1) whether the proposed Settlement was fairly and honestly negotiated; (2) whether serious
questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether
the value of an immediate recovery outweighs the mere possibility of future relief after protracted
and expensive litigation; and (4) the judgment of the parties that the Settlement is fair and
reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see
also* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule
23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of
Appeals).  These factors are, likewise, satisfied here.

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?") (citation modified); *Cotte v. CVI SGP Acquisition Tr.*, 2023 WL 1472428, at *7 (D. Utah Feb. 2, 2023) (noting that courts have "analyzed the adequacy of representation [under Rule 23(e)(2)(A)] by evaluating adequacy under Rule 23(a)(4)") (citation modified).

Lead Plaintiffs note that their prior appointment as Lead Plaintiffs under the Private Securities Litigation Reform Act also supports a finding that the Lead Plaintiffs are typical and adequate settlement class representatives, given that in order to have been appointed lead plaintiffs the District Court was required to find *(inter alia)* that they "satisfie[d] the requirements of Rule 23." 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc); *see also Gelt Trading Ltd. v. Co-Diagnostics, Inc.*, 2023 WL 5334623, at * 6 (D. Utah Aug. 18, 2023) ("Ultimately, there is no indication that Plaintiff has any conflict of interest with other class members or that Plaintiff will not prosecute the action vigorously on the class's behalf. This is why the court previously issued an order appointing Gelt as the lead plaintiff.").

Lead Plaintiffs, like the other Class Members, purchased SafeMoon (SFM) Tokens during the Class Period, and were injured by the same alleged wrongdoing. *Martinez v. Reams*, 2020 WL 7319081, at *6 (D. Colo. Dec. 11, 2020) (finding adequate representation where "there is nothing in the record or proposed settlement agreement that raises obvious concerns regarding interclass conflicts"); *see also Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *4-*5 (D. Colo. Apr. 13, 2021) (noting that "Plaintiffs' interest in obtaining the largest-possible recovery in this class action was firmly aligned with all class members").

Moreover, Lead Plaintiffs and Lead Counsel have vigorously represented the Class both by prosecuting the Action since its inception, through the motion to dismiss and the

Bankruptcy proceedings (as set forth herein), and by negotiating a favorable Settlement for an initial estimated payment of $12 million, plus the possibility of a subsequent payment into the settlement fund. Lead Counsel also note that they are well qualified and highly experienced in securities class action litigation and have recovered hundreds of millions of dollars for investors.[4]

As required by Rule 23(e)(2)(A), Lead Plaintiffs and Lead Counsel have adequately represented the Class by vigorously prosecuting the Action. Lead Counsel devoted significant time on this case, including, *inter alia*: a comprehensive investigation of the claims resulting in the filing of the initial complaints filed in this matter, filing papers in support of Lead Plaintiffs' PSLRA appointment motion, filing a detailed consolidated complaint and then a subsequent detailed amended complaint; defending against and overcoming Defendants' motions to dismiss, representing Lead Plaintiffs' interests in the Debtor Defendant's Chapter 7 proceeding, filing the Class Claim Motion in the Chapter 7 proceeding, and engaging in extensive settlement negotiations with Trustee, the Trustee's Counsel and Advisors, and Judge Pead. Lead Counsel has also worked with the Trustee and Trustee's Counsel in formalizing the settlement and presenting it to this Court and the Bankruptcy Court for approval.

Further, as discussed below (at §IV.C.5), Lead Plaintiffs and Lead Counsel's achievement of an initial payment of $12,000,000, plus the possibility of a subsequent

---

[4]    Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Micro Focus Int'l plc Sec. Litig.*, No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million settlement); *In re SanDisk LLC Sec. Litig.,* No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); and *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million settlement).

settlement residual fund, represents an excellent result for the Class.  Among other things, the settlement amount is far above the median securities class action settlement from 2015-2024 where individual investors served as lead plaintiffs.[5]  In the current case, "Plaintiffs and Lead Counsel were well-informed about the strengths and weaknesses of the Action, enabling them to appropriately consider the terms of the Settlement, the risks associated with continued litigation, and ultimately, the Settlement's fairness, reasonableness, and adequacy."  *In re Vivint Solar, Inc. Sec. Litig.*, No. 2:20-cv-00919-JNP-CMR, ECF No. 87 at 8 (D. Utah. Nov 10, 2021); *In re Samsung Top-load Washing Mach. Mktg., Sales Prod. Liab. Litig.*, 2020 U.S. Dist. LEXIS 90759, at *64-*65 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d 1077 (10th Cir. 2021) ("The parties' view of a settlement as fair and reasonable is to be given considerable weight.") (collecting cases).

### 2.    The Proposed Settlement Was Negotiated at Arm's-Length

The Settlement here is the product of fair, honest, and vigorous negotiations between experienced and informed counsel under the supervision of a highly experienced mediator. First, the proposed Settlement was the product of extensive arm's-length negotiations among highly experienced counsel knowledgeable about the Action.  *In re Molycorp, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 215174, at *13 (D. Colo. Feb. 15, 2017).  Settling parties are entitled to a presumption that a proposed settlement is fair and reasonable where the settlement "resulted from arm's length negotiations between experienced counsel."  *Lucas*, 234 F.R.D. at 693.

Moreover, as noted above, settlement negotiations were supervised by Chief Magistrate Judge Pead.  Courts in this Circuit and elsewhere have held that the involvement

---

[5]    Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2024 Review & Analysis*, CORNERSTONE RESEARCH (last visited Nov. 21, 2025), at 3, https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

of an experienced mediator strongly supports the fairness of a proposed settlement, and the Settling Parties respectfully submit that Judge Pead in particular is "a highly qualified mediator" who possesses considerable expertise in mediating complex cases.  *In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-cv-00707-JNP-DBP, ECF No. 285 (D. Utah Aug. 25, 2023) (finding "probative that the Settlement was negotiated at arm's length under the oversight of experienced mediators"); *see also In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 679, 690 (D. Colo. 2014) (citing the parties' mediation before an experienced mediator in support of preliminary approval of a proposed settlement); *Molycorp*, 2017 U.S. Dist. LEXIS 215174, at *13-*14 (same).

In addition, Lead Counsel, a nationwide leader in securities and cryptocurrency related class actions which has a thorough understanding of the factual and legal issues in the overlapping securities and bankruptcy actions, supports the Settlement.  Courts have consistently given "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (citation modified); *see also O'Dowd*, 2019 U.S. Dist. LEXIS 153610, at *41 ("The recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight.") (citation modified).  Moreover, the Lead Plaintiffs who were appointed pursuant to the PSLRA have endorsed the Settlement.

The Settlement is the product of an arm's-length negotiation overseen by an experienced mediator and has been approved by lead plaintiffs appointed pursuant to the PSLRA, with guidance and input from experienced and informed counsel.  It is, therefore, presumptively fair, reasonable, and adequate.

17

### 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the adequacy of a proposed settlement, courts balance the benefits afforded to the class—including the immediacy and certainty of a recovery—against the significant costs, risks, and delay of proceeding with the action through trial and inevitable appeal. Fed. R. Civ. P. 23(e)(2)(C)(i). While Lead Plaintiffs believe their claims have merit, if litigation were to proceed, Lead Plaintiffs would first have to prevail on the anticipated motion to dismiss, which had been stayed as to the Debtor Defendant. The Debtor Defendant reserves all rights as to the merits of the case, and would likely to continue to set forth strong arguments on the merits of the case. *Crocs I*, 2013 WL 4547404, at *12 ("Given the uncertainty of plaintiffs' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery."). Lead Plaintiffs would also face significant risks on summary judgment, class certification, and/or at a trial on the merits, including a likely battle of experts on securities fraud issues like loss causation and damages. *See, e.g.*, *Gradie v. C.R. Eng., Inc.*, 2020 U.S. Dist. LEXIS 218287, at *32-*34 (D. Utah Nov. 20, 2020) (noting risk of denial of class certification and "serious questions of law and fact" which could "result in no recovery at all" and that "any result that would come from proceeding with the case is likely years away"). Further litigation related to the Class Claim Motion in the Bankruptcy Court would have likewise used limited resources that can now go towards the settlement of these claims.

The instant Action faced numerous risks. While Lead Plaintiffs believe their claims to be meritorious, they recognize that there are significant hurdles to proving liability or even proceeding to trial. In their motion to dismiss, the Debtor Defendant articulated defenses to

the Complaint that the Court may have accepted at the class certification or summary judgment stage. If the bankruptcy stay were to be lifted, the Settling Parties would have proceeded with protracted and expensive litigation. Discovery would have been time-consuming and expensive, including significant fees for document production and hosting as well as for expert testimony regarding class certification, damages, and other matters. Lead Plaintiffs would also have faced significant obstacles in proving liability at trial. Resolving the Parties' disputes would likely have come down to an unpredictable and hotly disputed "battle of the experts."

Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total Settlement Amount—or nothing at all. *See Cotte*, 2023 WL 1472428, at *6 (finding "[t]he value of immediate relief to the class outweighs the possibility of future relief"); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (in assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a significant recovery, against the risk of trial). Furthermore, if Lead Plaintiffs and Lead Counsel managed to obtain any recovery at trial, almost certain appeals from any judgment would likely have put that recovery at risk, while entailing further delay and expense. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014) (approving settlement in light of including "the risks, complexity, duration, and expense of continuing litigation," including defendants' likelihood of appeal) (citation modified). For all of the preceding reasons, when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, the $12,000,000 Settlement Amount plus the possibility of a subsequent payment, strongly weighs in favor of preliminary approval of the Settlement.

### 4.    The Proposed Method for Distributing Relief Is Effective

As discussed further below, the methods of the proposed notice and of the claims administration process are effective and satisfy Rule 23(e)(2)(C)(ii).  The notice plan includes the Claims Administrator sending the: (i) Settlement Notice; (ii) Proof of Claim; (iii) Notice of Motion for Attorneys' Fees and Expenses; and (iv) Summary Notice, all of which are to be distributed by the Claims Administrator to known creditors on the creditor matrix and to other potential members of the Class via publication through social media channels, a dedicated settlement website, and on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block.  Lead Counsel also agrees to publish the Summary Notice via a press release on a newswire service.

### 5.    Lead Counsel's Maximum Potential Requested Attorneys' Fees and Expenses Are Reasonable and in Line with Similar Recent Cases

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  As stated in the Notice (Ex. A-1 at 9), Lead Counsel intend to seek an award of attorneys' fees in an amount up to $1.965 million (or 16.375% of the initial Settlement Fund) and expenses in an amount not to exceed $70,000.  This proposed fee is reasonable in light of the work performed by Lead Counsel, and is well within the range of percentage fees that are regularly awarded in securities class actions and other class actions in this Circuit.  *See, e.g.*, *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263-64 (10th Cir. 2023) (upholding district court's award of 33% fees and noting that "awards across a range of percentages may be reasonable"); *Peace Officers' Annuity and Benefit Fund of Ga. V. DaVita Inc.*, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund.") (citation modified); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178,

1257 (D.N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (citation modified).

Further, as explained in the Notice, the Lead Plaintiffs intend to request awards not to exceed a combined $15,000, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with the work they performed and expenses they incurred in representing the Class. Ex A.-1 at 9.

### 6.    The Parties Have No Side Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have no side agreement here.

### 7.    Class Members Are Treated Equitably

The final factor—Rule 23(e)(2)(D)—directs the Court to evaluate whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Plan of Allocation, developed by the Trustee and its advisors, in consultation with Lead Counsel, will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The proposed Plan of Allocation treats Class Members "equitably relative to each other" by: (i) applying the same standards to all Class members under the common Plan of Allocation; and (ii) distributing the Net Settlement Fund on a *pro rata* basis based on each Authorized Claimant's (Class Members who submit valid claims) share of the total recognized losses. The Plan of Allocation is consistent with plans of allocation regularly approved by courts in securities class actions, in that it will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See* Stipulation, ¶13; Ex. A-1 (Notice) at 6; *See, e.g.*, *Or. Labs. Emps. Pension Tr. Fund*, 2024 WL 98387, at *5 (approving plan allocating fund "to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims").

## V.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED

As set forth in the proposed Preliminary Approval Order, Lead Plaintiffs propose to give notice to Settlement Class Members by the Claims Administrator sending the: (i) Settlement Notice; (ii) Proof of Claim; (iii) Notice of Motion for Attorneys' Fees and Expenses; and (iv) Summary Notice, to known creditors and publishing to other potential members of the Class via publication through social media channels, a dedicated settlement website, and on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block.  Lead Counsel also agrees to publish the Summary Notice via a press release on a newswire service.  This notice program is adequate to satisfy the requirements of Rule 23 and due process.  Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances,"  Fed. R. Civ. P. 23(c)(2)(B), and Rule 23(e) directs "notice in a reasonable manner."  Fed. R. Civ. P. 23(e).  To satisfy due process, the notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174 (1974)).

With respect to the form of the notice, "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation modified).  "Notice is 'adequate if it may be understood by the average class member.'"  *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS

22

§11:53, at 167 (4th ed. 2002)).   The proposed Notice satisfies this standard.   It advises Settlement Class Members of the essential terms of this Settlement, the Plan of Allocation, and information regarding Lead Counsel's motion for attorneys' fees and expenses and Lead Plaintiffs' request for an award for the time and expenses they incurred prosecuting the Action.   Among other things, the Notice also will provide specifics on the date, time, and place of the Settlement Fairness Hearing and set forth the procedures for objecting to, or requesting exclusion from, the Settlement.   Moreover, the Notice provides this information in a format that is accessible to the reader and is also available, along with all other relevant documents, on the Settlement website, www.SafeMoonSettlement.com.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully request that the Court set a proposed schedule of events leading to the Settlement Fairness Hearing as listed forth below.   This schedule is reflected in the proposed Preliminary Approval Order.

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the transmittal of the Notice and Proof of Claim to known creditors and publication through social media channels, creation of a dedicated settlement website, and publication on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block; Lead Counsel to publish the Summary Notice via a press release on a newswire service (the "Notice Date"). | 20 calendar days after entry of the Preliminary Approval Order. |
| Deadline for posting and serving of memoranda in support of approval of the Settlement and Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and expenses, and Plaintiffs' request for an award for the time and expenses they incurred prosecuting the Action. | 14 calendar days before the deadline for objections to be filed. |

| Event | Time for Compliance |
|---|---|
| Deadline for submitting exclusion requests or Objections. | 21 calendar days before the Settlement Fairness Hearing. |
| Deadline for filing Proofs of Claim. | 120 calendar days after the Notice Date. |
| Deadline for posting and filing of reply memoranda in further support of the Settlement and Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and expenses, and Plaintiffs' requests for an award for the time and expenses they incurred prosecuting the Action. | 7 calendar days before the Settlement Fairness Hearing. |
| Settlement Fairness Hearing. | At the Court's convenience; the Settling Parties respectfully suggest approximately 90 days from the date notice is given pursuant to the Class Action Fairness Act, 28 U.S.C. §1715. |

## VII.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the Preliminary Approval Order in connection with the settlement proceedings, which will: (i) preliminarily approve of the proposed Settlement; (ii) approve the proposed form and manner of providing notice to the Class; (iii) schedule the Settlement Fairness Hearing to consider the fairness, reasonableness, and adequacy of the Settlement, and the proposed Plan of Allocation; (iv) appoint Stretto, Inc., under the Direction of the Trustee, as the Claims Administrator; and (v) grant such other and further relief as the Court may deem fair and proper.

DATED: January 15, 2026

SCOTT+SCOTT ATTORNEYS AT LAW
LLP

*s/ John T. Jasnoch*
John T. Jasnoch (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508

jjasnoch@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW
LLP**
Sean T. Masson (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
smasson@scott-scott.com

*Lead Counsel for Lead Plaintiffs*

Brent O. Hatch
**HATCH LAW GROUP**
22 E 100 S STE 400
Salt Lake City, UT 84111
801-869-1919
hatch@hatchpc.com

*Local Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on January 15, 2026, on all counsel or parties of record.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*s/      John T. Jasnoch*