John T. Jasnoch (admitted *pro hac vice*)
jjasnoch@scott-scott.com
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508

*Lead Counsel for Plaintiffs*

(Additional Counsel on Signature Page)

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MARK COMBS, VLAD IACOB, and BENJAMIN NORTHEY, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>v.<br><br>SAFEMOON LLC, SAFEMOON US, LLC, SAFEMOON CONNECT, LLC, TANO LLC, SAFEMOON LTD, SAFEMOON PROTOCOL LTD, SAFEMOON MEDIA GROUP LTD, BRADEN JOHN KARONY, JACK HAINES-DAVIES, HENRY "HANK" WYATT, JAKE PAUL, KYLE NAGY, DeANDRE CORTEZ WAY, BEN PHILLIPS, MILES PARKS McCOLLUM, THOMAS SMITH and DANIEL M. KEEM,<br><br>               Defendants. | **LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Case No. 2:22-cv-00642-DBB-JCB<br><br><br>Assigned Judge: Hon. David Barlow<br>Referred Magistrate Judge: Jared C. Bennett |

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    RELEVANT BACKGROUND .............................................................................4

       A.    The Commencement and Nature of the Action ......................................4

III.   SUMMARY OF THE SETTLEMENT ................................................................5

IV.    THE SETTLEMENTS WARRANT PRELIMINARY APPROVAL ............................8

       A.    The Standards for Preliminary Approval of a Proposed Settlement ......................8

       B.    The Settlements Satisfies Each of the Rule 23(e)(2) Factors ..............................10

             1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class ................................................................10

             2.    The Proposed Settlements Were Negotiated at Arm's-Length ...................13

             3.    The Proposed Settlements Are Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal .................................................14

             4.    The Proposed Method for Distributing Relief Is Effective ...........................16

             5.    Lead Counsel's Maximum Potential Requested Attorneys' Fees and Expenses Are Reasonable and in Line with Similar Recent Cases ..............16

             6.    The Parties Have a Customary Opt-Out Side Agreement ...........................17

             7.    Class Members Are Treated Equitably ........................................................18

V.     THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED...........18

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................20

VII.   CONCLUSION...........................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
  551 F.2d 804 (10th Cir. 1977) ...............................................................................8

*Blanco v. Xtreme Drilling & Coil Servs.*,
  2020 U.S. Dist. LEXIS 121996 (D. Colo. Mar. 8, 2020) .......................................9

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..................................................................................15

*Cotte v. CVI SGP Acquisition Tr.*,
  2023 WL 1472428 (D. Utah Feb. 2, 2023) ....................................................11, 15

*Dexter's LLC v. Gruma Corp.*,
  2023 WL 8790268 (S.D. Cal. Dec. 19, 2023)..........................................................7

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...............................................................................................19

*Gelt Trading Ltd. v. Co-Diagnostics, Inc.*,
  2023 WL 5334623 (D. Utah Aug. 18, 2023) .........................................................11

*Giles v. The Inflatable Store, Inc.*,
  2009 WL 801729 (D. Colo. Mar. 24, 2009) ............................................................8

*Gradie v. C.R. Eng., Inc.*,
  2020 U.S. Dist. LEXIS 218287 (D. Utah Nov. 20, 2020) .....................................14

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................................16

*In re Crocs, Inc. Sec. Litig.*,
  2013 WL 4547404 (D. Colo. Aug. 28, 2013) .....................................................9, 14

*In re Molycorp, Inc. Sec. Litig.*,
  2017 U.S. Dist. LEXIS 215174 (D. Colo. Feb. 15, 2017) .....................................13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................................13

*In re Samsung Top-load Washing Mach. Mktg., Sales Prod. Liab. Litig.*,
  2020 U.S. Dist. LEXIS 90759 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d
  1077 (10th Cir. 2021) .................................................................................... 13

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012) ............................................................ 17

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ................................................................ 9, 13

*Martinez v. Reams*,
  2020 WL 7319081 (D. Colo. Dec. 11, 2020) ................................................. 11

*O'Dowd v. Anthem, Inc.*,
  2019 U.S. Dist. LEXIS 153610 (D. Utah Sept. 9, 2019) .............................. 9, 13

*Or. Labs. Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
  2024 WL 98387 (D. Colo. Jan. 1, 2024) ...................................................... 8, 18

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
  2021 WL 1387110 (D. Colo. Apr. 13, 2021) .................................................. 11

*Peace Officers' Annuity and Benefit Fund of Ga. V. DaVita Inc.*,
  2021 WL 2981970 (D. Colo. July 15, 2021) ................................................... 17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ..................................................................... 10

*Tennille v. Western Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ....................................................................... 19

*Tuten v. United Airlines, Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. 2014) ............................................................... 8

*Voulgaris v. Array Biopharma, Inc.*,
  60 F.4th 1259 (10th Cir. 2023) ...................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................ 19

## Statutes, Rules, and Regulations

15 U.S. Code

§78u4(a)(3)(B)(iii)(I)(cc) ................................................................................ 11

§78u-4(a)(7) ...................................................................................................... 3

Federal Rules of Civil Procedure

Rule 23 .................................................................................................................3, 11, 19

Rule 23(a)(4) ....................................................................................................................11

Rule 23(c)(2) ....................................................................................................................19

Rule 23(c)(2) (B) .............................................................................................................19

Rule 23(e)(2)(C)(ii) .........................................................................................................16

Rule 23(e)(2)(C)(iii) ........................................................................................................16

Rule 23(e)(2)(C)(iv) ........................................................................................................17

Rule 23(e)(2)(D) ..............................................................................................................18

Rule 23(e) .....................................................................................................................8, 19

Rule 23(e)(1) ......................................................................................................................9

Rule 23(e)(2) ...........................................................................................................8, 9, 10

Rule 23(e)(2)(A) ....................................................................................................10, 11, 12

Rule 23(e)(2)(C)(i) ...........................................................................................................14

Rule 23(e)(3) ....................................................................................................................10

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11:53 (4th ed. 2002) .....................................................................................................................19

Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2024 Review & Analysis* ..........................................................................................................................12

https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf .............................................12

**RELIEF REQUESTED**

Lead Plaintiffs Mark Combs, Vlad Iacob, and Benjamin Northey ("Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class, through Court-appointed Lead Counsel, Scott+Scott Attorneys at Law LLP, respectfully move this Court for an Order, pursuant to Federal Rule of Civil Procedure 23: (i) preliminarily approving the proposed settlements (the "Settlements") of the above-captioned action between Lead Plaintiffs, on behalf of themselves and the Class, as defined below, and Defendant Jake Paul ("Paul") and Defendant Daniel Keem ("Keem") (ii) approving the form and manner of providing notice of the proposed Settlements to the Settlement Class, including the procedures and deadlines for objecting, seeking exclusion from the Settlement Class, and submitting Claim Forms; (iii) scheduling a date for a hearing (the "Settlement Fairness Hearing") to consider the fairness, reasonableness, and adequacy of the Settlements, the proposed plan of allocation for the Settlements' proceeds (the "Plan of Allocation"), and Lead Counsel's application for an award of attorneys' fees and expenses; (iv) appointing Stretto, Inc. as the Claims Administrator to administer the Settlements; and (v) granting such other and further relief as the Court may deem fair and proper.

## I.     INTRODUCTION

Lead Plaintiffs, on behalf of the Class, and Defendant Jake Paul, have reached a global resolution to resolve this securities class action for $200,000 for the benefit of Class Members. Lead Plaintiffs, on behalf of the Class, and Defendant Daniel Keem, have reached a global resolution to resolve this securities class action for $90,000 for the benefit of Class Members.

The terms of the respective Settlements are set forth in the two Stipulations and Agreement of Settlement and Release (the "Stipulations"), filed simultaneously herewith.[1]

 The Settlements are also the product of extensive arm's-length negotiations between the Settling Parties, through experienced counsel.  Prior to settlement, Lead Counsel undertook an extensive investigation before the filing of the initial and amended complaints in this action.  Among other things, Lead Counsel's investigation included: (a) an extensive factual investigation of the events underlying SafeMoon's rise and subsequent bankruptcy; (b) reviewing and analyzing the representations made by SafeMoon and its principals on social media; (c) reviewing and analyzing industry reports and comprehensive news reports, press releases, and other media files concerning SafeMoon; (d) thoroughly reviewing publicly filed documents in *In re Safemoon US, LLC*, Case No. 2:23-25749 (Bankr. D. Utah); (e) reviewing complaints and filings in *USA v. Karony,* Case No. 1:23-cr-00433 (E.D.N.Y.) and *Securities and Exchange Commission v. SafeMoon LLC*, Case No. 1:23-cv-08138 (E.D.N.Y.); and (f) interviewing impacted investors as well as industry experts.  There can be no doubt that by the time the Settlements were reached, Lead Counsel and Lead Plaintiffs were fully informed about the strengths and weaknesses of the case.

 Lead Plaintiffs and Lead Counsel, based on their experience, evaluation of the facts and applicable law, their recognition of the near-term payment of the combined settlement amount of $290,000, and the risk and expense of continued litigation, submit that the proposed Settlements are fair, reasonable, and adequate.  The Settlements constitutes excellent results and are in the best interests of the Class.  Accordingly, Lead Plaintiffs respectfully request

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulations.  The Stipulations are attached as Exhibits 1 and 2 to the Declaration of John T. Jasnoch in Support of Preliminary Approval, filed herewith.

that the Court grant preliminary approval of the Settlements so that notice may be provided to the Class.

Lead Plaintiffs request that this Court enter the Parties' agreed-upon [Proposed] Orders Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith as Exhibit A to the Stipulations, which, among other things, will: (i) preliminarily approve the Settlements on the terms set forth in the Stipulations; (ii) approve the form and content of the Notices of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notices attached as Exhibits A-1 and A-3 to the Stipulations, respectively, in connection with the Proposed Settlements, as well as the processing of Proofs of Claim; (iii) find that the procedures for distribution of the Notices and publication of the Summary Notices in the manner and form set forth in the Preliminary Approval Orders constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and §21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) set a schedule and approve procedures for: disseminating the Notices and publication of the Summary Notices; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and expenses; submitting papers in support of final approval of the Settlements; and the Settlement Fairness Hearing. Lead Plaintiffs respectfully propose the schedule for proceeding with final approval of the Settlements set forth in Section VI below.

## II.    RELEVANT BACKGROUND

### A.  The Commencement and Nature of the Action

SafeMoon US, LLC, was a cryptocurrency and blockchain company based in Pleasant Grove, Utah that was created in March 2021.  Concurrent with its inception, SafeMoon created and sold a SafeMoon token ("SafeMoon Token" or "SFM Token") that trades on the BNB Smart Chain, Polygon, and Ethereum blockchains.  The value of the SFM Token increased exponentially in its first month of existence, with the SafeMoon Token's market capitalization reaching billions of dollars in April 2021.  Over time, however, allegations that Safemoon principals made misrepresentations and engaged in other alleged misconduct led to a sharp reduction in the market price of the SFM Tokens.

This Securities Action was filed in the Central District of California on February 17, 2022 (the "California District Court").  On May 9, 2022, Lead Plaintiffs and Lead Counsel moved under the PSLRA to be appointed lead plaintiffs and lead counsel, and each Lead Plaintiff submitted a signed certification identifying their transactions in SafeMoon Tokens, and attesting to their willingness to represent the Proposed Class.  By order dated June 7, 2022, the California District Court consolidated two related SafeMoon class actions determined (after the sixty-day PSLRA notice period for moving for appointment as the class representative had expired) that Lead Plaintiffs were the "most adequate plaintiffs" and appointed them as lead plaintiffs in the consolidated Securities Action.  *See* ECF No. 52.  Pursuant to the Lead Plaintiff Order, the California Federal Court (a) granted Lead Plaintiffs the authority to "represent the Class" in the Securities Action and any subsequent "related actions"; and (b) appointed Scott+Scott Attorneys at Law LLP ("Scott+Scott" or "Lead Counsel") as lead counsel in the Securities Action, with the authority to "speak for all plaintiffs and Class members in all matters regarding the litigation, including, but not limited to, pre-trial proceedings, motion practice, trial and settlement."  *Id.*

On October 5, 2022, the Securities Litigation was transferred to the District of Utah, and was thereafter assigned to this Court.  On March 17, 2023, the operative Complaint was filed, the First Amended Complaint (the "Complaint").

Rather than go through the time and expense of litigating a motion to dismiss, the Settling Parties explored early resolution. Following protracted good faith, arm's length negotiation efforts, Lead Plaintiffs and Defendant Jake Paul, by and through their respective counsel, reached a final agreement for the settlement of the Lead Plaintiffs' claims against Defendant Jake Paul in the Action.

Similarly, rather than go through the time and expense of litigating a motion to dismiss, the Settling Parties explored early resolution. Following protracted good faith, arm's length negotiation efforts, Lead Plaintiffs and Defendant Daniel Keem, by and through their respective counsel, reached a final agreement for the settlement of the Lead Plaintiffs' claims against Defendant Daniel Keem in the Action.

III.    SUMMARY OF THE SETTLEMENT

The proposed Settlement with Jake Paul will result in the creation of a settlement fund consisting of two hundred thousand dollars ($200,000) in cash (the "Paul Settlement Fund"), which will be deposited in a separate, interest-bearing account.  The proposed Settlement with Daniel Keem will result in the creation of a settlement fund consisting of ninety thousand dollars ($90,000) in cash (the "Keem Settlement Fund"), which will be deposited in a separate, interest-bearing account.  All payments are non-reversionary.  Stipulation, ¶1.  In exchange for the payments into the Settlement Fund, the Action will be dismissed as to Defendants Paul and Keem, and all Releasing Parties will release their claims.  *Id.*, ¶5.

Further, the Plan of Allocation allocates the proceeds of the Settlement, net of any Court-approved fees and expenses, in a *pro rata* fashion among the Settlement Class. *See id.*, ¶13; Ex. A-1 (Notice) at pg. 6. The recovery of individual Class Members under the Plan of Allocation will depend on several variables, including: the aggregate value of the Class Member's SafeMoon Token purchases, whether SafeMoon Tokens were sold, and if so, when, and how much was sold. *See id.* The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

The Notice, attached as Exhibit A-1 to the Stipulations, explains the terms of the Settlements, including that the Net Settlement Funds will be distributed to eligible Class Members who submit valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation (which is also included in the Notice). *See generally* Stipulation, Ex. A-1. The Notice also advises Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees and expenses; (ii) the procedures for objecting to the Settlements, the Plan of Allocation, or the request for attorneys' fees and expenses; (iii) the means by which Class Members can exclude themselves from the Settlements; and (iv) the date, time, and location of the Settlement Fairness Hearing. *See id.*

If the Court grants preliminary approval, the proposed Claims Administrator[2] will serve: (i) the Notices of Pendency of Class Action and Proposed Settlements in substantially the same form attached to the Stipulations of Settlement (**Exhibit A-1**, the "Settlement Notices"); (ii) the Proof of Claim and Release (**Exhibit A-2,** the "Proof of Claim"); (iii) the Notices of

---

[2] The Settling Parties jointly propose that the Court appoint Stretto, Inc., to serve as the Claims Administrator. Stretto is a well-known claims administrator with substantial experience in administering class action settlements and bankruptcies and is already handling claims in connection with the Chapter 7 proceeding.

Motion for Attorneys' Fees and Expenses; and (iv) Summary Notices, substantially in the form attached as **Exhibit A-3**, all of which are to be distributed by the Claims Administrator to known creditors on the creditor matrix and to other potential members of the Class via publication through social media channels, a dedicated settlement website, and on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block. Lead Counsel also agrees to publish the Summary Notices via a press release on a newswire service.  *See* Stipulation, Ex. A (Preliminary Approval Order), ¶5(a).

As discussed below (at §IV.C.5), Lead Plaintiffs believe that the proposed Settlements, represents favorable results for the Class because it provides immediate recoveries, particularly when compared to the risks that continued litigation might result in smaller recoveries, or no recoveries at all.  While Lead Plaintiffs and Lead Counsel believe the claims asserted against the Settling Defendants have merit, Lead Plaintiffs would have faced substantial challenges in establishing liability and damages on these novel claims and recovering on any substantial judgment.  The Settlements will result in the creation of cash settlement funds totaling payments of two hundred and ninety thousand dollars ($290,000) in cash (the "Combined Settlement Fund"), which will be deposited in a separate, interest-bearing account.

Finally, Lead Plaintiffs faced substantial risks that, if the Action proceeded to trial, they would not be able to prove their claims.  And, cryptocurrency law is developing, posing inherent risks that a new decision could shift the legal landscape as to liability and damages. *See, e.g., Dexter's LLC v. Gruma Corp.*, 2023 WL 8790268, at *5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval of settlement given "the evolving legal landscape" of the law at issue in the case).  The Settlements therefore provide an immediate recovery for Class Members in a case where Lead Plaintiffs and Lead Counsel were well-

positioned to assess the Action's strengths and weaknesses, including the potential limitations on damages and recovery, prior to agreeing to accept the proposed Settlements.

At this stage, the Court need not engage in a detailed analysis of the fairness of the Settlements, as that is reserved for the hearing on final approval, at which time interested Settlement Class Members and Lead Plaintiffs' and Settling Defendants' Counsel will be heard on the matter.

## IV.    THE SETTLEMENTS WARRANT PRELIMINARY APPROVAL

### A.  The Standards for Preliminary Approval of a Proposed Settlement

The Tenth Circuit has recognized that "the inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977) (citation modified); *see also Giles v. The Inflatable Store, Inc.*, 2009 WL 801729, at *5 (D. Colo. Mar. 24, 2009) ("The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation.") (citation modified).  This policy has even more force in complex class actions such as this one, "where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (citation modified); *see also Or. Labs. Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *4 (D. Colo. Jan. 1, 2024) ("The presumption in favor of voluntary settlement agreements is especially strong in class actions.") (citation modified).

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Review of a class action settlement is a two-step process.  The court first performs a preliminary review to determine whether notice should be sent to the class; and then, after notice is provided and a hearing set, the court makes a final determination as to whether the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  Strong judicial

and public policy favors settlements, particularly in the class and complex actions. *See, e.g.*, *O'Dowd v. Anthem, Inc.*, 2019 U.S. Dist. LEXIS 153610, at *35 (D. Utah Sept. 9, 2019).  At this stage, Lead Plaintiffs seek preliminary approval of the Settlements, authorization of notice of the Settlement to be given to the Class, scheduling of the Settlement Fairness Hearing, and the granting of such other and further relief as the Court may deem fair and proper. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also In re Crocs, Inc. Sec. Litig. ("Crocs I")*, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.") (citation modified).

The present stage requires only that the Court find that the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *Blanco v. Xtreme Drilling & Coil Servs.*, 2020 U.S. Dist. LEXIS 121996, at *3 (D. Colo. Mar. 8, 2020) (citation modified).  Pursuant to Rule 23(e)(1), at this stage, the issue is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule 23(e)(2) lists a set of factors that the Court must consider in determining whether the settlement is "fair, reasonable, and adequate":

    (A)    the Plaintiffs and Lead Counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's-length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of

payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

As explained below, Lead Plaintiffs respectfully submit that they have met all of the

requirements imposed by Rule 23(e)(2) and, therefore, respectfully request that the Court

grant preliminary approval.[3]

### B.    The Settlements Satisfies Each of the Rule 23(e)(2) Factors

### 1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class

In weighing approval, courts consider whether "the class representatives and class

counsel have adequately represented the class," which involves an inquiry into any conflicts

between Lead Plaintiffs and the Class and the ability of Lead Plaintiffs and Lead Counsel to

conduct the litigation.  Fed. R. Civ. P. 23(e)(2)(A); *see also Rutter*, 314 F.3d at 1187-88

("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their

counsel have any conflicts of interest with other class members and (2) will the named

---

[3]      In connection with final approval, the Court will also be asked to consider the Tenth
Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors:
"(1) whether the proposed Settlement was fairly and honestly negotiated; (2) whether serious
questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether
the value of an immediate recovery outweighs the mere possibility of future relief after protracted
and expensive litigation; and (4) the judgment of the parties that the Settlement is fair and
reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see
also* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule
23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of
Appeals).  These factors are, likewise, satisfied here.

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?") (citation modified); *Cotte v. CVI SGP Acquisition Tr.*, 2023 WL 1472428, at *7 (D. Utah Feb. 2, 2023) (noting that courts have "analyzed the adequacy of representation [under Rule 23(e)(2)(A)] by evaluating adequacy under Rule 23(a)(4)") (citation modified).

Lead Plaintiffs note that their prior appointment as Lead Plaintiffs under the Private Securities Litigation Reform Act also supports a finding that the Lead Plaintiffs are typical and adequate settlement class representatives, given that in order to have been appointed lead plaintiffs the District Court was required to find *(inter alia)* that they "satisfie[d] the requirements of Rule 23." 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc); *see also Gelt Trading Ltd. v. Co-Diagnostics, Inc.*, 2023 WL 5334623, at * 6 (D. Utah Aug. 18, 2023) ("Ultimately, there is no indication that Plaintiff has any conflict of interest with other class members or that Plaintiff will not prosecute the action vigorously on the class's behalf. This is why the court previously issued an order appointing Gelt as the lead plaintiff.").

Lead Plaintiffs, like the other Class Members, purchased SafeMoon (SFM) Tokens during the Class Period, and were injured by the same alleged wrongdoing. *Martinez v. Reams*, 2020 WL 7319081, at *6 (D. Colo. Dec. 11, 2020) (finding adequate representation where "there is nothing in the record or proposed settlement agreement that raises obvious concerns regarding interclass conflicts"); *see also Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *4-*5 (D. Colo. Apr. 13, 2021) (noting that "Plaintiffs' interest in obtaining the largest-possible recovery in this class action was firmly aligned with all class members").

Moreover, Lead Plaintiffs and Lead Counsel have vigorously represented the Class both by prosecuting the Action since its inception, and by negotiating favorable Settlements

with the Settling Defendants prior to briefing their responsive motion to dismiss. Lead Counsel also note that they are well qualified and highly experienced in securities class action litigation and have recovered hundreds of millions of dollars for investors.[4]

As required by Rule 23(e)(2)(A), Lead Plaintiffs and Lead Counsel have adequately represented the Class by vigorously prosecuting the Action. Lead Counsel devoted significant time on this case, including, *inter alia*: a comprehensive investigation of the claims resulting in the filing of the initial complaints filed in this matter, filing papers in support of Lead Plaintiffs' PSLRA appointment motion, filing a detailed consolidated complaint and then a subsequent detailed amended complaint, and engaging in extensive settlement negotiations with counsel for Defendant Jake Paul and Defendant Daniel Keem. Lead Counsel has also worked with the Settling Defendants' counsel in formalizing the settlement and presenting it to this Court for approval.

Further, as discussed below (at §IV.C.5), Lead Plaintiffs and Lead Counsel's achievement of combined payments of $290,000, represents an excellent result for the Class. Among other things, when combined with the proposed settlement with the Debtor SafeMoon US, LLC, the settlement amount is far above the median securities class action settlement from 2015-2024 where individual investors served as lead plaintiffs.[5] In the current case,

---

[4]    Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Micro Focus Int'l plc Sec. Litig.*, No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million settlement); *In re SanDisk LLC Sec. Litig.,* No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); and *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million settlement).

[5]    Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2024 Review & Analysis*, CORNERSTONE RESEARCH (last visited Nov. 21, 2025), at 3, https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

"Plaintiffs and Lead Counsel were well-informed about the strengths and weaknesses of the Action, enabling them to appropriately consider the terms of the Settlement, the risks associated with continued litigation, and ultimately, the Settlement's fairness, reasonableness, and adequacy." *In re Vivint Solar, Inc. Sec. Litig.*, No. 2:20-cv-00919-JNP-CMR, ECF No. 87 at 8 (D. Utah. Nov 10, 2021); *In re Samsung Top-load Washing Mach. Mktg., Sales Prod. Liab. Litig.*, 2020 U.S. Dist. LEXIS 90759, at *64-*65 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d 1077 (10th Cir. 2021) ("The parties' view of a settlement as fair and reasonable is to be given considerable weight.") (collecting cases).

### 2.    The Proposed Settlements Were Negotiated at Arm's-Length

The Settlements here are the product of fair, honest, and vigorous negotiations between experienced and informed counsel under the supervision of a highly experienced mediator. First, the proposed Settlements were the product of extensive arm's-length negotiations among highly experienced counsel knowledgeable about the Action. *In re Molycorp, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 215174, at *13 (D. Colo. Feb. 15, 2017). Settling parties are entitled to a presumption that a proposed settlement is fair and reasonable where the settlement "resulted from arm's length negotiations between experienced counsel." *Lucas*, 234 F.R.D. at 693.

In addition, Lead Counsel, a nationwide leader in securities and cryptocurrency-related class actions which has a thorough understanding of the factual and legal issues in the overlapping securities and bankruptcy actions, supports the Settlements. Courts have consistently given "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (citation modified); *see also O'Dowd*, 2019 U.S.

Dist. LEXIS 153610, at *41 ("The recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight.") (citation modified). Moreover, the Lead Plaintiffs who were appointed pursuant to the PSLRA have endorsed the Settlements.

The Settlements are the product of arm's-length negotiations and have been approved by Lead Plaintiffs appointed pursuant to the PSLRA, with guidance and input from experienced and informed counsel. They are, therefore, presumptively fair, reasonable, and adequate.

> ### 3. The Proposed Settlements Are Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the adequacy of a proposed settlement, courts balance the benefits afforded to the class—including the immediacy and certainty of a recovery—against the significant costs, risks, and delay of proceeding with the action through trial and inevitable appeal. Fed. R. Civ. P. 23(e)(2)(C)(i). While Lead Plaintiffs believe their claims have merit, if litigation were to proceed, Lead Plaintiffs would first have to prevail on the anticipated motion to dismiss, which were stayed as to the Settling Defendants while the Parties negotiated their Settlements. The Settling Defendants deny all liability and reserve all rights as to the merits of the case, and would likely to continue to set forth strong arguments on the merits of the case. *Crocs I*, 2013 WL 4547404, at *12 ("Given the uncertainty of plaintiffs' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery.").

Lead Plaintiffs would also face significant risks on summary judgment, class certification, and/or at a trial on the merits, including a likely battle of experts on securities fraud issues like loss causation and damages. *See, e.g.*, *Gradie v. C.R. Eng., Inc.*, 2020 U.S.

Dist. LEXIS 218287, at *32-*34 (D. Utah Nov. 20, 2020) (noting risk of denial of class
certification and "serious questions of law and fact" which could "result in no recovery at all"
and that "any result that would come from proceeding with the case is likely years away").
Further litigation would have likewise used limited resources that can now go toward the
settlement of these claims.

      The instant Action faced numerous risks.  While Lead Plaintiffs believe their claims
to be meritorious, they recognize that there are significant hurdles to proving liability or even
proceeding to trial.  In any motion to dismiss, the Settling Defendants would have articulated
defenses to the Complaint that the Court may have accepted.  Lead Plaintiffs also faced risks
and uncertainties at the class certification and summary judgment stages.  Discovery would
have been time-consuming and expensive, including significant fees for document production
and hosting as well as for expert testimony regarding class certification, damages, and other
matters.  Lead Plaintiffs would also have faced significant obstacles in proving liability at
trial.  Resolving the Parties' disputes would likely have come down to an unpredictable and
hotly disputed "battle of the experts."

      Accordingly, in the absence of a settlement, there was a very real risk that the Class
would have recovered an amount significantly less than the combined Settlements, or nothing
at all.  *See Cotte*, 2023 WL 1472428, at *6 (finding "[t]he value of immediate relief to the
class outweighs the possibility of future relief"); *City of Detroit v. Grinnell Corp.*, 495 F.2d
448, 463 (2d Cir. 1974) (in assessing the Settlement, the Court should balance the benefits
afforded the Class, including the immediacy and certainty of a significant recovery, against
the risk of trial).  Furthermore, if Lead Plaintiffs and Lead Counsel managed to obtain any
recovery at trial, almost certain appeals from any judgment would likely have put that

recovery at risk, while entailing further delay and expense. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014) (approving settlement in light of including "the risks, complexity, duration, and expense of continuing litigation," including defendants' likelihood of appeal) (citation modified). For all of the preceding reasons, when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, the $290,000 combined Settlement Amount strongly weighs in favor of preliminary approval of the Settlements.

### 4.    The Proposed Method for Distributing Relief Is Effective

As discussed further below, the methods of the proposed notice and of the claims administration process are effective and satisfy Rule 23(e)(2)(C)(ii). The notice plan includes the Claims Administrator sending the: (i) Settlement Notices; (ii) Proof of Claim; (iii) Notice of Motion for Attorneys' Fees and Expenses; and (iv) Summary Notices, all of which are to be distributed by the Claims Administrator to known creditors on the creditor matrix and to other potential members of the Class via publication through social media channels, a dedicated settlement website, and on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block. Lead Counsel also agree to publish the Summary Notices via a press release on a newswire service.

### 5.    Lead Counsel's Maximum Potential Requested Attorneys' Fees and Expenses Are Reasonable and in Line with Similar Recent Cases

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As stated in the Notice (Ex. A-1 at 9), Lead Counsel intend to seek an award of attorneys' fees and expenses in an amount not to exceed $95,000. This proposed fee is reasonable in light of the work performed by Lead Counsel and is well within the range of percentage fees that are regularly awarded in securities class actions and other

class actions in this Circuit. *See, e.g.*, *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263-64 (10th Cir. 2023) (upholding district court's award of 33% fees and noting that "awards across a range of percentages may be reasonable"); *Peace Officers' Annuity and Benefit Fund of Ga. V. DaVita Inc.*, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund.") (citation modified); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (citation modified).

### 6. The Parties Have a Customary Opt-Out Side Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Settling Parties have entered into Supplemental Agreements Regarding Requests for Exclusion which allows for termination of the Settlements if a certain number of class members seek exclusion from the Class. Such agreements have no negative impact on a securities settlement's fairness. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). As is standard practice in securities cases, the Settling Parties have agreed to keep the supplemental agreements' terms confidential to avoid encouraging the formation of an opt-out group that might result in "blowing up" the settlements to the class's detriment. If the Court requires, the Supplemental Agreements can be submitted under seal.

17

### 7.    Class Members Are Treated Equitably

The final factor—Rule 23(e)(2)(D)—directs the Court to evaluate whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D). The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The proposed Plan of Allocation treats Class Members "equitably relative to each other" by: (i) applying the same standards to all Class members under the common Plan of Allocation; and (ii) distributing the Net Settlement Fund on a *pro rata* basis based on each Authorized Claimant's (Class Members who submit valid claims) share of the total recognized losses.  The Plan of Allocation is consistent with plans of allocation regularly approved by courts in securities class actions, in that it will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See* Stipulation, ¶13; Ex. A-1 (Notice) at 6; *See, e.g.*, *Or. Labs. Emps. Pension Tr. Fund*, 2024 WL 98387, at *5 (approving plan allocating fund "to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims").

## V.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED

As set forth in the proposed Preliminary Approval Orders, Lead Plaintiffs propose to give notice to Settlement Class Members by the Claims Administrator sending the: (i) Settlement Notices; (ii) Proof of Claim; (iii) Notices of Motion for Attorneys' Fees and Expenses; and (iv) Summary Notices, to known creditors and publishing to other potential members of the Class via publication through social media channels, a dedicated settlement website, and on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block.  Lead Counsel also agree to publish the Summary Notices

via a press release on a newswire service. This notice program is adequate to satisfy the requirements of Rule 23 and due process. Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and Rule 23(e) directs "notice in a reasonable manner." Fed. R. Civ. P. 23(e). To satisfy due process, the notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174 (1974)).

With respect to the form of the notices, "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation modified). "Notice is 'adequate if it may be understood by the average class member.'" *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11:53, at 167 (4th ed. 2002)). The proposed Notices satisfy this standard. They advise Settlement Class Members of the essential terms of this Settlement, the Plan of Allocation, and information regarding Lead Counsel's motion for attorneys' fees and expenses and Lead Plaintiffs' request for an award for the time and expenses they incurred prosecuting the Action. Among other things, the Notices also will provide specifics on the date, time, and place of the Settlement Fairness Hearing and set forth the procedures for objecting to, or requesting exclusion from, the Settlement. Moreover, the Notices provide this information in

a format that is accessible to the reader and is also available, along with all other relevant

documents, on the Settlement website, www.SafeMoonSettlement.com.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully request that the Court set a proposed schedule of events leading

to the Settlement Fairness Hearing as listed forth below.  This schedule is reflected in the

proposed Preliminary Approval Orders.

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the transmittal of the Notice and Proof of Claim to known creditors and publication through social media channels, creation of a dedicated settlement website, and publication on one of the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and/or The Block; Lead Counsel to publish the Summary Notice via a press release on a newswire service (the "Notice Date"). | 20 calendar days after entry of the Preliminary Approval Orders. |
| Deadline for posting and serving of memoranda in support of approval of the Settlement and Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses. | 14 calendar days before the deadline for objections to be filed. |
| Deadline for submitting exclusion requests or Objections. | 21 calendar days before the Settlement Fairness Hearing. |
| Deadline for filing Proofs of Claim. | 120 calendar days after the Notice Date. |
| Deadline for posting and filing of reply memoranda in further support of the Settlement and Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and expenses, and Plaintiffs' requests for an award for the time and expenses they incurred prosecuting the Action. | 7 calendar days before the Settlement Fairness Hearing. |
| Settlement Fairness Hearing. | At the Court's convenience, the Settling Parties respectfully suggest approximately 90 days from the date notice is given |

| Event | Time for Compliance |
|---|---|
|  | pursuant to the Class Action Fairness Act, 28 U.S.C. §1715. |

## VII.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the Preliminary Approval Orders in connection with the settlement proceedings, which will: (i) preliminarily approve the proposed Settlements; (ii) approve the proposed form and manner of providing notices to the Class; (iii) schedule the Settlement Fairness Hearing to consider the fairness, reasonableness, and adequacy of the Settlements and the proposed Plan of Allocation; (iv) appoint Stretto, Inc., as the Claims Administrator; and (v) grant such other and further relief as the Court may deem fair and proper.

DATED: February 5, 2026

SCOTT+SCOTT ATTORNEYS AT LAW LLP

*s/ John T. Jasnoch*
John T. Jasnoch (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

SCOTT+SCOTT ATTORNEYS AT LAW LLP
Sean T. Masson (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
smasson@scott-scott.com

*Lead Counsel for Lead Plaintiffs*

Brent O. Hatch
**HATCH LAW GROUP**
22 E 100 S STE 400
Salt Lake City, UT 84111
801-869-1919
hatch@hatchpc.com

*Local Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF

on February 5, 2026, on all counsel or parties of record.  Notice of this filing will be sent to

all counsel of record by operation of the Court's electronic filing system.

<i><u>s/      John T. Jasnoch</u></i>