UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MARK COMBS, VLAD IACOB, and BENJAMIN NORTHEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEMOON LLC, SAFEMOON US, LLC, SAFEMOON CONNECT, LLC, TANO LLC, SAFEMOON LTD, SAFEMOON PROTOCOL LTD, SAFEMOON MEDIA GROUP LTD, BRADEN JOHN KARONY, JACK HAINES-DAVIES, HENRY "HANK" WYATT, JAKE PAUL, KYLE NAGY, DeANDRE CORTEZ WAY, BEN PHILLIPS, MILES PARKS McCOLLUM, THOMAS SMITH and DANIEL M. KEEM,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' [213] AND [214] MOTIONS FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AGREEMENTS**<br><br>Case No. 2:22-cv-00642-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement Agreement with Ellen E. Ostrow, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Defendant SafeMoon US, LLC ("SafeMoon US") (the "SafeMoon Motion")[1] and Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement Agreements with Defendant Jake Paul and Defendant Daniel Keem (the "Paul/Keem Motion").[2]

---

[1] Mot. Preliminary Approval of Proposed Class Action Settlement ("SafeMoon Motion"), ECF No. 213, filed Jan. 15, 2026.
[2] Mot. Preliminary Approval of Proposed Class Action Settlement ("Paul/Keem Motion"), ECF No. 214, filed Feb. 5, 2026.

## BACKGROUND

**Procedural Background**

This case involves allegations that the SafeMoon entities and their executives, along with certain celebrity promoters, promoted and sold a cryptocurrency associated with SafeMoon (the "SFM Token").[3] Plaintiffs allege that Defendants' actions violated federal securities law.[4] In early 2023, Plaintiffs reported that they had reached settlement agreements in principle with Mr. Paul and Mr. Keem and asked the court to stay all case deadlines relating to those defendants pending the parties' requests for preliminary approval.[5] Those requests were granted.[6]

The remaining defendants filed separate motions to dismiss the amended complaint.[7] After the motions were fully briefed, Defendant SafeMoon US gave notice that it had filed for chapter 7 bankruptcy.[8] The court automatically stayed all proceedings as to SafeMoon US.[9] In its subsequent order on the various motions to dismiss, the court dismissed most of Plaintiffs' claims.[10] After the court's order, the only cause of action remaining against the SafeMoon defendants[11] was Plaintiffs' claim that SafeMoon had violated Section 12(a)(1) of the Securities Act by selling an unregistered security.[12]

---

[3] Amended Complaint ¶ 2, ECF No 133, filed Mar. 17, 2023.
[4] *See generally id.*
[5] *See* Paul Settlement Notice, ECF No. 141, filed Apr. 24, 2023; Keem Settlement Notice, ECF No. 145, filed May 9, 2023.
[6] Paul Stay, ECF No. 144, entered Apr. 24, 2023; Keem Stay, ECF No. 148, entered May 10, 2023.
[7] *See* ECF. Nos. 149, 150, 152, 156.
[8] Bankruptcy Notice, ECF No. 189, filed Jan. 9, 2024.
[9] SafeMoon US Stay, ECF No. 190, entered Jan. 10, 2024.
[10] Order Granting in Part and Denying in Part Motions to Dismiss ("MTD Order")75–76, ECF No. 191, entered Mar. 29, 2024.
[11] Except SafeMoon US, for which the case was stayed as it continued with bankruptcy proceedings.
[12] MTD Order 75; Amended Compl. ¶¶ 474–82.

**SafeMoon Agreement**

The Plaintiffs' proposed settlement agreement with SafeMoon US (the "SafeMoon Agreement") is attached in its entirety to the SafeMoon Motion as an exhibit.[13] The court will summarize certain portions here that are relevant to the preliminary approval analysis. Under the proposed agreement, the "class" is defined as "all persons and entities that purchased SFM Tokens from March 8, 2021, through November 1, 2023."[14] Plaintiffs Mark Combs, Vlad Iacob, and Benjamin Northey are designated as "class representatives."[15] The SafeMoon Agreement would release all claims by class members against SafeMoon US; the Trustee; Ronin Crypto Group, LC; Ronin Energy Group, LC; Ronin Money Transfer Operations, LC; Ronin Real Estate Holdings, LC; SafeMoon Media Co. Ltd.; SafeMoon, LLC; SafeMoon, Ltd.; SafeMoon Connect, LLC; SafeMoon Lithuania (CEX); and SafeMoon Protocol, Ltd.[16]

The settlement fund, which the parties estimate will contain at least $12 million dollars when distributed to the class,[17] will be distributed to class members on a pro rata basis calculated by subtracting the amount a claimant paid for his or her SFM Tokens from the amount the claimant received in any sale of those Tokens.[18] Each claimant's recognized claim will be calculated as a percentage of all recognized claims, and the claimant will be entitled to that percentage of the settlement fund.[19] The parties also agree that the lead plaintiffs may request awards not exceeding a combined $15,000.[20] Counsel for Plaintiff will seek attorney's fees up to

---

[13] Proposed Settlement Agreement ("SafeMoon Agreement"), ECF No. 213-2, filed Jan. 15, 2026.
[14] *Id.* at 7.
[15] *Id.* at 8.
[16] *Id.* at 11, 14.
[17] Declaration of Ellen Ostrow ("Trustee Declaration") ¶¶ 4–5, ECF No. 216, filed Feb. 26, 2026.
[18] SafeMoon Agreement 18; SafeMoon Motion 8–9.
[19] SafeMoon Agreement 46.
[20] SafeMoon Motion 21.

$1.965 million and expenses up to $70,000.[21] The SafeMoon Agreement includes a proposed notice form.[22] Plaintiffs intend for the claims administrator to issue this notice to potential class members by sending it directly to known creditors and publishing it on social media channels, a settlement website, and one of three listed "online Cryptocurrency media outlets."[23]

**Paul/Keem Agreements**

The Paul/Keem Agreements each use the same definition of "class" and "class representatives."[24] Jake Paul and Daniel Keem are the released defendants.[25] The Paul Agreement settlement fund consists of $200,000,[26] and the Keem Agreement settlement fund consists of $90,000.[27] Each claimant's share of the settlement fund will be calculated in the same manner set forth in the SafeMoon Agreement.[28] The proposed methods of notice are also the same as those described in the SafeMoon Motion.[29] Plaintiffs' counsel intends to seeks a maximum of $95,000 in fees and expenses for these agreements.[30]

**STANDARD**

Under Rule 23 of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."[31] "Preliminary

---

[21] *Id.* at 20.

[22] SafeMoon Agreement 40.

[23] SafeMoon Motion 22.

[24] Proposed Settlement Agreement ("Paul Agreement") 4–5, ECF No. 214-2, filed Feb. 5, 2026; Proposed Settlement Agreement ("Keem Agreement") 4–5, ECF No. 214-3, filed Feb. 5, 2026.

[25] Paul Agreement 7; Keem Agreement 7.

[26] Paul Agreement 8.

[27] Keem Agreement 8.

[28] Paul Agreement 42; Keem Agreement 43.

[29] Paul/Keem Motion 18.

[30] *Id.* 16.

[31] Fed. R. Civ. P. 23(e).

approval of a proposed settlement is the first of two steps required before a class action may be settled."[32] If preliminary approval is granted, the court moves to the second step where "it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement."[33] Rule 23(e) requires a court to grant preliminary approval if the parties show that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[34]

### DISCUSSION

I.      **SafeMoon Agreement**

     A.      **Likely Approval Under Rule 23(e)(2)**

A court must grant preliminary approval to a class action settlement agreement if the parties show that the proposal would likely be approved under Rule 23(e)(2).[35] Rule 23(e)(2) states that, after a hearing, the court may approve a proposed class action settlement "on finding that it is fair, reasonable, and adequate."[36] In determining whether a proposed settlement meets this standard, courts are instructed to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other.[37]

While the "fair, reasonable, and adequate" standard must be satisfied before a settlement agreement is approved, at the first step the parties need only show that the agreement is likely to

---

[32] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).
[33] *Id.*
[34] Fed. R. Civ. P 23(e)(1)(B).
[35] *Id.*
[36] Fed. R. Civ. P 23(e)(2).
[37] *Id.*

be approved under this standard.[38] Therefore, "[p]reliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[39] This is a "less stringent" standard than that which applies for final approval.[40] Generally, a court should grant preliminary approval if the proposal "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."[41] It is the parties' obligation to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."[42]

In this case, an objection to the proposed SafeMoon Agreement has been filed by Defendant Braden John Karony.[43] Mr. Karony argues that several of the Rule 23(e)(2) factors are not satisfied in this case.[44] He also argues that the court should not grant preliminary approval because the proposed agreement contains "obvious deficiencies."[45]

### 1.      Adequate Representation

The first factor for consideration under Rule 23(e)(2) is whether the class representatives and counsel have adequately represented the class.[46] Here, the class representatives and counsel seem to adequately represent the class. The representatives' injuries and claims arise out of the

---

[38] *See* Fed. R. Civ. P 23(e)(1)(B).

[39] *Ross v. Convergent Outsourcing, Inc*., 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F.Supp.2d 601, 607 (W.D.N.Y. 2011)) (cleaned up).

[40] *In re Motor Fuel Temperature Sales Pracs. Litig*., 286 F.R.D. 488, 492 (D. Kan. 2012).

[41] *Id*. (quoting *Am. Med. Ass'n v. United Healthcare Corp*., No. 00 CIV. 2800LMM, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009)).

[42] Fed. R. Civ. P. 23(e)(1)(A).

[43] Objection to Motion for Preliminary Approval ("Objection"), ECF No. 215, filed Feb. 12, 2026.

[44] *Id.* at 21, 24.

[45] *Id.* at 16.

[46] Fed. R. Civ. P.  23(e)(2)(A).

same allegations of securities violations related to the SFM Token as the rest of the class.[47] The class counsel have represented that they are experienced in this type of litigation, and no objections have been raised about potential conflicts of interest.[48] The court finds that this factor would likely weigh in favor of approval.

### 2.    Arm's Length Negotiation

The second factor asks whether the proposed agreement was negotiated at arm's length.[49] In this case, Plaintiffs represent that the agreement was negotiated in part in a settlement conference with a neutral mediator.[50] This strongly supports the conclusion that this factor has been satisfied.[51] Mr. Karony objects that the negotiations were not fair and honest because the Trustee ignores his rights as a residual claimant.[52] In response to Mr. Karony's arguments that the Trustee has violated a fiduciary duty toward him, Plaintiffs submitted a declaration by the Trustee.[53] In that declaration, the Trustee referred the court to arguments she made in SafeMoon US's bankruptcy proceeding addressing the same objections.[54] The Trustee states that Mr. Karony ignores the significant benefits to the bankruptcy estate offered by the settlement and that, contrary to Mr. Karony's arguments, the debtor estate is insolvent.[55]

---

[47] *See generally* Amended Compl.
[48] SafeMoon Motion 15.
[49] Fed. R. Civ. P.  23(e)(2)(B).
[50] SafeMoon Motion 2.
[51] *In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-00292-RM-KMT, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017), *report and recommendation adopted*, No. 12-CV-00292-RM-KMT, 2017 WL 4333998 (D. Colo. Mar. 6, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").
[52] Objection 21–22.
[53] Reply in Support of SafeMoon Motion ("Reply") 6, ECF No. 217, filed Feb. 26, 2026.
[54] Trustee Declaration ¶ 6.
[55] Trustee's Bankruptcy Reply 4, 7, ECF No. 213–5, filed Jan. 15, 2026.

The court finds that this factor would likely weigh in favor of approval as well. Mr. Karony's arguments seem to reflect disagreement with the Trustee about the substance of the proposed settlement and its benefit to the estate. However, the Objection does not meaningfully cast doubt upon the negotiation process itself. The court finds nothing to indicate that the Trustee has colluded Plaintiffs to receive some personal benefit or that the settlement process before an experienced, neutral mediator was not an arm's length negotiation.[56]

### 3.    Adequate Relief

The third factor considers whether the proposed settlement provides adequate relief, accounting for the costs and risks of continued litigation, the methods of distribution, and the terms of any attorney's fees.[57] Here, Plaintiffs indicate that the $12 million settlement funds represents an "excellent result for the Class" in light of their previous experience and familiarity with the strengths and weaknesses of this case.[58] They also state that continued litigation would be risky.[59] Mr. Karony argues that the actual payout "will be nowhere close to $12 million"[60] and includes the SafeMoon US claims register as an exhibit to show around $6 million in allowed claims.[61] In response, Plaintiffs filed the Trustee Declaration declaring that the estate currently

---

[56] Mr. Karony rests much of his argument on this point on the Seventh Circuit case, *Matter of Central Ice Cream Co.* He suggests that the Seventh Circuit reversed a bankruptcy settlement agreement because the "trustee did not consider the shareholders' interests." *See* Objection 22–23. This is incorrect. The court in *Central Ice Cream* considered a motion for sanctions under Fed. R. App. P. 38 and an appeal from the district court's denial of monetary sanctions under Rule 11. *Matter of Cent. Ice Cream Co.*, 836 F.2d 1068, 1071 (7th Cir. 1987). The decision had no effect on the settlement itself, so the court's analysis in that case has little bearing on the issues here.
[57] Fed. R. Civ. P.  23(e)(2)(C).
[58] SafeMoon Motion 15–16.
[59] *Id.* at 18.
[60] Objection 24.
[61] Claims Register 2, ECF No. 215-1, filed Feb. 12, 2026.

holds over $19.6 million and that the Trustee anticipates distributing at least $12 million to the settlement class.[62]

This factor also likely weighs in favor of approval. The risks of continued litigation are apparent given that and that the merits of Plaintiffs' remaining claims are fiercely disputed.[63] Many of Plaintiffs' claims have been dismissed already,[64] but not all.[65] Furthermore, the court finds that Mr. Karony's concerns about the amount in the estate are offset by a sworn declaration from the estate's Trustee that there are more than sufficient funds to satisfy the settlement. Finally, the requested attorney's fees are around sixteen percent of the common fund, which is lower than other award amounts that are typically considered reasonable.[66]

### 4. Equitable Treatment

Fourth, Rule 23(e)(2)(D) requires courts to determine whether the proposal "treats class members equitably relative to each other."[67] The proposed agreement here likely does so, as it divides the settlement fund proportionally to the actual losses incurred by the class members.[68] There is no indication that any subset of class members would be favored or disfavored under the proposed distribution method.

---

[62] Trustee Declaration ¶¶ 4, 5.
[63] *See* Objection 8–14.
[64] *See* MTD Order.
[65] *Id.*
[66] SafeMoon Motion 20; *see also Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc*., No. 17-CV-0304-WJM-NRN, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (quoting *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014)) ("Courts in the Tenth Circuit have noted that 'the typical fee award in complex cases is around one third of the common fund.'").
[67] Fed. R. Civ. P. 23(e)(2)(D).
[68] SafeMoon Agreement 18.

### 5. *Jones* Factors

In the Tenth Circuit, courts must also consider four additional factors set forth in *Jones v. Nuclear Pharmacy, Inc* before approving a class action settlement agreement.[69] The *Jones* factors are:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[70]

These factors largely overlap with those set forth in Rule 23(e)(2).[71] The court finds that it would also likely be able to approve the proposed agreement under these factors for many of the same reasons stated above. The settlement was negotiated in part through a neutral mediator, the merits of Plaintiffs' claims are disputed, and the Plaintiffs and Trustee agree that the settlement agreement is mutually beneficial.

### 6. Obvious Deficiencies

Mr. Karony also argues that the $12 million settlement amount is itself a glaring deficiency because Plaintiffs' one remaining claim has no merit.[72] As an initial matter, the court notes that, though its analysis in the Motion to Dismiss Order treated all the SafeMoon entities as a collective, the case was already stayed as to SafeMoon US when that decision was entered.[73] Therefore, the court's Order had no effect on SafeMoon US,[74] and none of SafeMoon US's

---

[69] *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984).
[70] *Id.*
[71] Fed. R. Civ. P. 23(e)(2).
[72] *Id.*
[73] MTD Order 1 n.1.
[74] *See* ECF No. 192.

10

claims have been dismissed.[75] Even if SafeMoon US faced only a single remaining claim, Mr.

Karony's arguments all relate to the merits of the claim.[76] He argues that Plaintiffs will not be

able to demonstrate that the SFM Tokens were a security, that the tokens were purchased in the

United States, or that SafeMoon was involved in the Token sales.[77]

The Supreme Court has clearly stated that "nothing in either the language or history of

Rule 23 [] gives a court any authority to conduct a preliminary inquiry into the merits of a suit in

order to determine whether it may be maintained as a class action."[78] "In determining the

propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are

met."[79] It is not proper for the court to make a preliminary determination of the merits of

contested claims when deciding whether to give notice of the proposed agreement.

Having considered the above factors, the court finds that it would likely be able to

approve the proposal under Rule 23(e)(2).[80]

### B.    Likely Class Certification

The court must also find that it would likely be able to "certify the class for purposes of

judgment on the proposal" before giving notice and a hearing.[81] A class action may only be

certified if:

---

[75] Plaintiffs have recognized that, though the case was stayed as to SafeMoon US when the court entered its Order, the court's "analysis of the SafeMoon entities' liability would apply in equal force to [SafeMoon US]." Plaintiffs' Bankruptcy Reply 6, ECF No. 213–4, filed Jan. 15, 2026.
[76] Objection 16.
[77] *Id.* at 17–19.
[78] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).
[79] *Id.* at 178 (quoting *Miller v. Mackey International*, 452 F.2d 427 (CA5 1971)).
[80] *See* Fed. R. Civ. P. 23(e)(1)(B).
[81] Fed. R. Civ. P. 23(e)(1).

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[82]

Once these four elements are satisfied, the parties must also show that the proposed class meets the requirements of one of the three "types of class actions" set forth in Rule 23(b).

Mr. Karony once again argues that the above elements cannot be satisfied in this case.[83] However, unlike their detailed Rule 23(e)(2) arguments, Plaintiffs offer no arguments in their Motion showing that the court will likely be able to certify the proposed class for purposes of judgment on the proposal. Plaintiffs' Reply to the Objection similarly provides only meager analysis on the subject of class certification, preferring instead to direct the court to arguments that Plaintiffs previously made in the bankruptcy proceeding.[84]

Plaintiffs' attempt to incorporate by reference arguments made elsewhere is not good practice. Attaching a reply brief from separate court proceedings as an exhibit and then asking the court to search that brief for relevant arguments is not enough to satisfy Plaintiffs' burden under Rule 23(e)(1)(A).[85] Furthermore, having briefly reviewed the attached bankruptcy court reply brief, the court notes that the class certification arguments therein are likely insufficient, especially those relating to the predominance and superiority requirements under Rule 23(b)(3). Based on the information and arguments provided by Plaintiffs, the court is unable to find that it would likely be able to certify the proposed class as required by Rule 23.[86]

---

[82] Fed. R. Civ. P. 23(a).
[83] Objection 9–15.
[84] Reply 3.
[85] *See* Fed. R. Civ. P. 23(e)(1)(A)–(B)(ii).
[86] Fed. R. Civ. P. 23(e)(1)(B).

## II.    Paul/Keem Agreements

Plaintiffs also request preliminary approval of proposed class action settlement agreements with Defendants Jake Paul and Daniel Keem.[87] As discussed above, these proposed settlement agreements are similar to the SafeMoon Agreement, so much of the court's Rule 23(e)(2) analysis will overlap. There have been no objections to the proposed Paul/Keem Agreements.

### A.    Likely Approval Under Rule 23(e)(2)

The court finds that it will likely be able to approve the proposed Paul/Keem Settlements under each factor of Rule 23(e)(2). The class representatives and class counsel will likely represent the class adequately for the same reasons listed above. The proposal, like the SafeMoon Agreement, was negotiated under the supervision of a neutral mediator and experienced counsel.[88] The settlement amount, a total of $290,000, is relatively substantial given that these settling defendants are individual promoters.[89] It will likely be adequate, especially considering the risks of continued litigation. Furthermore, the requested attorney's fees equal about one-third of the settlement amount, a reasonable percentage.[90] Finally, as with the SafeMoon Agreement, there is no indication that class members would be treated inequitably based on the Paul/Keem Proposals' distribution plan. For these same reasons, the proposals would likely satisfy the similar *Jones* factors.

---

[87] Paul/Keem Motion.

[88] Paul/Keem Motion 13.

[89] *Id.* at 16.

[90] *Id.*; *see also Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-CV-0304-WJM-NRN, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (quoting *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014)) ("Courts in the Tenth Circuit have noted that 'the typical fee award in complex cases is around one third of the common fund.'").

13

**B.    Likely Class Certification**

Though Plaintiffs address each Rule 23(e)(2) factor, they once again fail to provide any information that would allow the court to determine if it would likely be able to certify the proposed class. The court cannot find based on the information provided that it would likely be able to certify the proposed classes in the Paul/Keem Agreements.

## ORDER

Plaintiffs' [213] and [214] Motions for Preliminary Approval of Proposed Class Action Settlement Agreements are DENIED without prejudice.

Signed March 30, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

14