UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MARK COMBS, VLAD IACOB, and BENJAMIN NORTHEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEMOON LLC, SAFEMOON US, LLC, SAFEMOON CONNECT, LLC, TANO LLC, SAFEMOON LTD, SAFEMOON PROTOCOL LTD, SAFEMOON MEDIA GROUP LTD, BRADEN JOHN KARONY, JACK HAINES-DAVIES, HENRY "HANK" WYATT, JAKE PAUL, KYLE NAGY, DeANDRE CORTEZ WAY, BEN PHILLIPS, MILES PARKS McCOLLUM, THOMAS SMITH and DANIEL M. KEEM,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' [223] AND [224] RENEWED MOTIONS FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AGREEMENTS AND DENYING DEFENDANT KARONY'S [226] MOTION FOR COORDINATION HEARING**<br><br>Case No. 2:22-cv-00642-DBB-JCB<br><br>District Judge David Barlow |

Before the court are Plaintiffs' Second Motion for Preliminary Approval of Proposed

Class Action Settlement Agreement with Ellen E. Ostrow, the Chapter 7 trustee (the "Trustee")

for the bankruptcy estate of Defendant SafeMoon US, LLC ("SafeMoon US"),[1] Plaintiffs'

Second Motion for Preliminary Approval of Proposed Class Action Settlement Agreements with

---

[1] Second Mot. Preliminary Approval of Proposed Class Action Settlement ("Second SafeMoon Motion"), ECF No. 223, filed Apr. 3, 2026.

1

Defendant Jake Paul and Defendant Daniel Keem,[2] and Defendant Braden John Karony's

Motion for Coordination Hearing Between Parallel Cases.[3]

## BACKGROUND

**Procedural Background**

This case involves allegations that the SafeMoon entities and their executives, along with certain celebrity promoters, promoted and sold a cryptocurrency associated with SafeMoon (the "SFM Token").[4] Plaintiffs allege that Defendants' actions violated federal securities law.[5] In early 2023, Plaintiffs reported that they had reached settlement agreements in principle with Mr. Paul and Mr. Keem and asked the court to stay all case deadlines relating to those defendants pending the parties' requests for preliminary approval.[6] Those requests were granted.[7]

The remaining defendants filed separate motions to dismiss the amended complaint.[8] After the motions were fully briefed, Defendant SafeMoon US gave notice that it had filed for Chapter 7 bankruptcy.[9] The court automatically stayed all proceedings as to SafeMoon US.[10] In its subsequent order on the various motions to dismiss, the court dismissed most of Plaintiffs' claims.[11] After the court's order, the only cause of action remaining against the SafeMoon

---

[2] Second Mot. Preliminary Approval of Proposed Class Action Settlement ("Second Paul/Keem Motion"), ECF No. 224, filed Apr. 8, 2026.

[3] Motion for Coordination Hearing, ECF No. 226, filed May 1, 2026.

[4] Amended Compl. ¶ 2, ECF No 133, filed Mar. 17, 2023.

[5] *See generally id.*

[6] *See* Paul Settlement Notice, ECF No. 141, filed Apr. 24, 2023; Keem Settlement Notice, ECF No. 145, filed May 9, 2023.

[7] Paul Stay, ECF No. 144, entered Apr. 24, 2023; Keem Stay, ECF No. 148, entered May 10, 2023.

[8] *See* ECF. Nos. 149, 150, 152, 156.

[9] Bankruptcy Notice, ECF No. 189, filed Jan. 9, 2024.

[10] SafeMoon US Stay, ECF No. 190, entered Jan. 10, 2024.

[11] Order Granting in Part and Denying in Part Motions to Dismiss ("MTD Order") 75–76, ECF No. 191, entered Mar. 29, 2024.

defendants[12] was Plaintiffs' claim that SafeMoon had violated Section 12(a)(1) of the Securities Act by selling an unregistered security.[13]

In early 2026, the parties filed motions for preliminary approval of proposed settlement agreements with the Trustee and with Defendants Paul and Keem.[14] The court denied those motions without prejudice.[15] In its order, the court found that the proposed settlement agreements were likely to be approved as fair, reasonable, and adequate under Rule 23(e)(2) of the federal rules of civil procedure.[16] However, the court was unable to find that it would likely be able to certify the proposed class under Rule 23(a) and (b) because Plaintiffs offered no arguments relating to class certification and did not satisfy their burden on that issue.[17] Plaintiffs subsequently filed the motions currently before the court, again requesting preliminary approval of the same settlement agreement proposals.[18] Additionally, an Objection to the SafeMoon Motion was filed by Defendant Braden John Karony on the grounds that he is the sole equity owner of SafeMoon US and is entitled to receive any surplus of the bankruptcy estate.[19] Mr.

---

[12] In its Order Granting in Part and Denying in Part Motions to Dismiss, the court jointly analyzed Plaintiffs' claims against all the SafeMoon entities. *See* MTD Order 1 n.1. However, the court explained that, due to the bankruptcy stay, the court's order would have no effect on SafeMoon US, even though SafeMoon US originally joined one of the motions to dismiss. *Id.* Nevertheless, Plaintiffs have recognized that the court's analysis of the SafeMoon entities' liability would apply with equal force to SafeMoon US if the litigation against it were to proceed. *See* Plaintiffs' Bankruptcy Reply 6, ECF No. 213–4, filed Jan. 15, 2026.

[13] MTD Order 75; Amended Compl. ¶¶ 474–82.

[14] *See* Mot. Preliminary Approval of Proposed Class Action Settlement ("First SafeMoon Motion"), ECF No. 213, filed Jan. 15, 2026; Mot. Preliminary Approval of Proposed Class Action Settlement ("First Paul/Keem Motion"), ECF No. 214, filed Feb. 5, 2026.

[15] Order Denying Motions for Preliminary Approval of Proposed Class Action Settlement Agreements ("Settlement Order") 14, ECF No. 221, entered Mar. 30, 2026.

[16] *Id.* at 11, 13.

[17] *Id.* at 12, 14.

[18] *See* Second SafeMoon Motion; Second Paul/Keem Motion.

[19] Objection to Second Motion for Preliminary Approval ("Objection") 4, ECF No. 225, filed May 1, 2026.

Karony argues that the SafeMoon Motion should be denied for failing to satisfy the Rule 23 class

certification standards among other things.[20]

**SafeMoon Agreement**

The Plaintiffs' proposed settlement agreement with SafeMoon US (the "SafeMoon

Agreement") is attached in its entirety to the SafeMoon Motion as an exhibit.[21] The court will

summarize certain portions here that are relevant to the preliminary approval analysis. Under the

proposed agreement, the "class" is defined as "all persons and entities that purchased SFM

Tokens from March 8, 2021, through November 1, 2023."[22] Plaintiffs Mark Combs, Vlad Iacob,

and Benjamin Northey are designated as "class representatives."[23] The SafeMoon Agreement

would release all claims by class members against SafeMoon US; the Trustee; Ronin Crypto

Group, LC; Ronin Energy Group, LC; Ronin Money Transfer Operations, LC; Ronin Real Estate

Holdings, LC; SafeMoon Media Co. Ltd.; SafeMoon, LLC; SafeMoon, Ltd.; SafeMoon Connect,

LLC; SafeMoon Lithuania (CEX); and SafeMoon Protocol, Ltd.[24]

The settlement fund, which the parties estimate will contain at least $12 million dollars

when distributed to the class,[25] will be distributed to class members on a pro rata basis calculated

by subtracting the amount a claimant paid for his or her SFM Tokens from the amount the

claimant received in any sale of those Tokens.[26] Each claimant's recognized claim will be

calculated as a percentage of all recognized claims, and the claimant will be entitled to that

---

[20] *See generally id.*
[21] Proposed Settlement Agreement ("SafeMoon Agreement"), ECF No. 223-2, filed Apr. 3, 2026.
[22] *Id.* at 7.
[23] *Id.* at 8.
[24] *Id.* at 11, 14.
[25] Declaration of Ellen Ostrow ("Trustee Declaration") ¶¶ 4–5, ECF No. 216, filed Feb. 26, 2026.
[26] SafeMoon Agreement 18.

percentage of the settlement fund.[27] The SafeMoon Agreement includes a proposed notice

form.[28] Plaintiffs intend for the claims administrator to issue this notice to potential class

members by sending it directly to known creditors and publishing it on social media channels, a

settlement website, and one of three listed "online Cryptocurrency media outlets."[29]

**Paul/Keem Agreements**

The Paul/Keem Agreements each use the same definition of "class" and "class

representatives."[30] Jake Paul and Daniel Keem are the released defendants.[31] The Paul

Agreement settlement fund consists of $200,000,[32] and the Keem Agreement settlement fund

consists of $90,000.[33] Each claimant's share of the settlement fund will be calculated in the same

manner set forth in the SafeMoon Agreement.[34] The proposed methods of notice are also the

same as those described in the SafeMoon Motion.[35]

**STANDARD**

Under Rule 23 of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses

of a certified class—or a class proposed to be certified for purposes of settlement—may be

settled, voluntarily dismissed, or compromised only with the court's approval."[36] "Preliminary

approval of a proposed settlement is the first of two steps required before a class action may be

---

[27] *Id.* at 46.
[28] *Id.* at 40.
[29] Second SafeMoon Motion 23.
[30] Proposed Settlement Agreement ("Paul Agreement") 4–5, ECF No. 224-2, filed Apr. 3, 2026; Proposed Settlement Agreement ("Keem Agreement") 4–5, ECF No. 224-3, filed Apr. 3, 2026.
[31] Paul Agreement 7; Keem Agreement 7.
[32] Paul Agreement 8.
[33] Keem Agreement 8.
[34] Paul Agreement 42; Keem Agreement 43.
[35] Second Paul/Keem Motion 22–23.
[36] Fed. R. Civ. P. 23(e).

settled."[37] If preliminary approval is granted, the court moves to the second step where "it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement."[38] Rule 23(e) requires a court to grant preliminary approval if the parties show that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[39]

## DISCUSSION

### I.        Likely Approval Under Rule 23(e)(2)

A court must grant preliminary approval to a class action settlement agreement if the parties show that the proposal would likely be approved under Rule 23(e)(2).[40] Rule 23(e)(2) states that, after a hearing, the court may approve a proposed class action settlement "on finding that it is fair, reasonable, and adequate."[41] In its previous order, the court found that the same proposed settlement agreements at issue in these motions are likely to be approved as fair, reasonable, and adequate under Rule 23(e)(2) of the Federal Rules of Civil Procedure.[42] The court's reasoning and analysis in that order applies with equal force here.

### II.       SafeMoon Class Certification

Plaintiffs also ask the court to certify the proposed class for settlement purposes.[43] A class action may only be certified if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

---

[37] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).
[38] *Id.*
[39] Fed. R. Civ. P 23(e)(1)(B).
[40] *Id.*
[41] Fed. R. Civ. P 23(e)(2).
[42] Settlement Order 11, 13.
[43] Second SafeMoon Motion 1.

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[44]

Once these four elements are satisfied, the parties must also show that the proposed class meets the requirements of one of the three "types of class actions" set forth in Rule 23(b).

In this case, the parties seek to proceed under Rule 23(b)(3),[45] which allows a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[46] When analyzing a "settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)(D).[47] But other aspects of Rule 23(b)(3) "demand undiluted, even heightened, attention in the settlement context" because the court lacks any opportunity to later adjust the class as proceedings unfold.[48]

"A party seeking class certification must show 'under a strict burden of proof'" that all class certification requirements are met.[49] Final class certification, including for settlement purposes, is only proper if the court determines "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."[50] But Rule 23(e)(1)(B) requires the court to direct notice of a proposed settlement to putative class members upon a showing that "the court will likely be able to . . . certify the class for purposes of judgment on the proposal."[51] After a proposed class is

---

[44] Fed. R. Civ. P. 23(a).
[45] Second SafeMoon Motion 7.
[46] Fed. R. Civ. P. 23(b)(3).
[47] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).
[48] *Id.*
[49] *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (Quoting *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir. 1988)).
[50] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).
[51] Fed. R. Civ. P. 23(e)(1)(B)(ii).

conditionally certified and notice is sent, the parties must "demonstrat[e] at the final approval hearing—under a strict burden of proof—that the requirements of Rule 23(a) and (b)(3) are clearly satisfied."[52]

### A.    Rule 23(a)

#### 1.    Numerosity

The first Rule 23(a) element requires that a class be "so numerous that joinder of all members is impracticable."[53] The proposed class for these settlement agreements is defined as "all persons and entities that purchased SFM Tokens from March 8, 2021, through November 1, 2023."[54] Plaintiffs assert that there are over 710,000 cryptocurrency wallet addresses holding SFM Tokens and that over 1,500 claims have already been submitted in the related SafeMoon US bankruptcy proceeding.[55] Plaintiffs infer from this that the proposed class consists of at least several thousand people.[56] Joinder of thousands of separate plaintiffs in a single case would be impracticable to say the least. The court finds that, given the number of proposed class members, the numerosity element will likely be satisfied.[57]

#### 2.    Commonality

The second Rule 23(a) element asks whether "there are questions of law or fact common to the class."[58] "A single common question will suffice to satisfy rule 23(a)(2), but the question

---

[52] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 502 (D. Kan. 2012).
[53] Fed. R. Civ. P. 23(a)(1).
[54] SafeMoon Agreement 7; Paul Agreement 4; Keem Agreement 4.
[55] Second SafeMoon Motion 7–8.
[56] *Id.* at 8.
[57] *See Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class.").
[58] Fed. R. Civ. P. 23(a)(2).

must be one 'that is central to the validity of each one of the claims.'"[59] The commonality

element "requires the plaintiff to demonstrate that the class members 'have suffered the same

injury.'"[60] The claims of the proposed class members must "depend on a common contention"

that is "capable of class-wide resolution."[61] "Factual differences between class members' claims

do not defeat certification where common questions of law exist."[62]

Here, Plaintiffs argue the proposed class members suffered similar injuries based on

violations of the Securities Act and that resolution of the claims depends on common questions

like whether the SMF Tokens were securities and how Defendants marketed the SFM Tokens.[63]

The court finds that this element will also likely be satisfied. At the very least, the question of

whether the SFM Tokens were unregistered securities will apply to each class member as a

central issue that is capable of class-wide determination. The commonality element only asks

whether there are at least some common questions,[64] and there are in this case.

### 3.    Typicality

The third Rule 23(a) element considers whether "the claims or defenses of the

representative parties are typical of the claims or defenses of the class."[65] The Supreme Court has

noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."[66]

Plaintiffs argue that the lead Plaintiffs' claims are typical because they, like all other proposed

---

[59] *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 349 F.R.D. 365, 402 (D.N.M. 2025) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).
[60] *Wal-Mart Stores*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).
[61] *Id.* at 350.
[62] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).
[63] Second SafeMoon Motion 9.
[64] Fed. R. Civ. P. 23(a)(2).
[65] Fed. R. Civ. P. 23(a)(3).
[66] *Falcon*, 457 U.S. at 158 n.13.

class members, allege that they purchased SFM Tokens based on Defendants' representations and experienced loss of investment value.[67]

Mr. Karony argues that typicality is not satisfied because each member of the proposed class will rely on different facts to prove their claim, including whether they saw an advertisement for SFM Tokens, when they saw the ad, who made the ad, and whether the ad induced their purchase of SFM Tokens.[68] However, as with commonality, "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."[69] Here, each member of the proposed class, including the representative Plaintiffs, has claims against SafeMoon US based on the same legal theory, sale of an unregistered security under § 12(a)(1) of the securities act. Thus, the typicality element is likely satisfied because the lead Plaintiffs allege the same harm and same legal theory as other class members.

### 4.    Adequacy

The fourth and final Rule 23(a) element requires courts to determine whether "the representative parties will fairly and adequately protect the interests of the class."[70] The Tenth Circuit has provided two questions that determine the legal adequacy of class representation, "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[71] As the court already found in its prior Rule 23(e)(2) analysis, there are no apparent

---

[67] Second SafeMoon Motion 11.
[68] Objection 18.
[69] *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).
[70] Fed. R. Civ. P. 23(a)(4).
[71] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

conflicts of interest in this case, and the Plaintiffs and their counsel have participated fully and consistently in the litigation and settlement process.[72] The court finds that this element, along with all the other Rule 23(a) elements for class certification, will likely be met.

### B.    Rule 23(b)(3)

Once a party shows that it has satisfied the Rule 23(a) factors for a class action, it must also demonstrate that one of the three "types of class actions" set forth in Rule 23(b) is appropriate.[73] Here, Plaintiffs assert that their case qualifies under Rule 23(b)(3),[74] which provides that a class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[75]

### 1.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[76] Essentially, the predominance prong "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[77] Courts must "*characterize* the issues in the case as common or not, and then *weigh* which issues predominate."[78] Rule 23(b)'s

---

[72] Settlement Order 6–7.
[73] Fed. R. Civ. P. 23(b).
[74] Second SafeMoon Motion 7.
[75] Fed. R. Civ. P. 23(b)(3).
[76] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).
[77] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting 2 William B. Rubenstein et al., *Newberg on Class Actions* § 4:49, at 195–96 (5th ed. 2012)).
[78] *Id.* (emphasis in original).

"predominance criterion is far more demanding" than the Rule 23(a) commonality requirement.[79]

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."[80] In this case, the court must survey the elements of the class's § 12(a)(1) claim against SafeMoon US and "consider (1) which of those elements are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not."[81]

Section 12(a)(1) states that "[a]ny person who . . . offers or sells a security in violation of [Section 5] . . . shall be liable . . . to the person purchasing such security from him."[82] Section 5 makes it "unlawful for any person, directly or indirectly" to sell an unregistered security.[83] Thus, a claim under § 12(a) has three elements: "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale."[84]

### a.    Status as Security

Plaintiffs argue that the central issue in this case, whether SafeMoon US sold an unregistered security, is amenable to common proof from the same evidence.[85] Mr. Karony objects that numerous other issues are individual in nature, including questions about extraterritoriality, damages, whether class members relied on SafeMoon US's solicitations, and

---

[79] *Amchem Prods.*, 521 U.S. at 624.
[80] *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).
[81] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).
[82] 15 U.S.C.A. § 77l(a).
[83] 15 U.S.C.A. § 77e(a)(1).
[84] *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 939 (10th Cir. 2022).
[85] Second SafeMoon Motion 15.

12

whether SafeMoon US received sales proceeds.[86] At least one § 12(a)(1) element, whether SFM Tokens qualify as securities, is indisputably common to all class members. The question of whether these tokens qualify as securities and whether they were registered as such is a central issue—arguably the most central issue— and is clearly susceptible to generalized proof.

### b.        Purchased from SafeMoon US

The second element, whether SafeMoon US sold or offered the tokens to each class member, requires more consideration. Only a buyer's "immediate seller" may be liable as a seller under this provision,[87] which "contemplates a buyer-seller relationship not unlike traditional contractual privity."[88] This means that a buyer cannot recover against his seller's seller.[89] The Supreme Court in *Pinter v. Dahl* further explained that "the range of persons potentially liable under § 12(1) is not limited to persons who pass title."[90] An individual who engages in solicitation can also fall within the scope of § 12.[91] This court previously held in its order on Defendants' various motions to dismiss that mass communications disseminated through social media platforms—like those alleged by Plaintiffs here—can qualify as an offer or solicitation.[92]

But § 12(a) makes it clear that a person who offers or sells an unregistered security is only liable "to the person purchasing such security from him."[93] To establish a § 12(a) violation against SafeMoon US, each class member will have to show that they either purchased their SFM Tokens directly from SafeMoon US or that they purchased their SFM Tokens as a result of

---

[86] Objection 9–13.

[87] *Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988).

[88] *Id.* at 642.

[89] *Id.* at 644 n.21.

[90] *Pinter*, 486 U.S. at 643.

[91] *Id.*

[92] MTD Order 43–45.

[93] *See* 15 U.S.C.A. § 77l(a).

13

SafeMoon US's alleged solicitations.[94] Mr. Karony argues that this element is not susceptible to generalized proof.[95] The court agrees in part. To be sure, the question of whether SafeMoon US offered SFM Tokens via mass communications and advertisements is susceptible to generalized proof. However, class members cannot prove this element by merely showing that SafeMoon US generally sold SFM Tokens or advertised those tokens. Instead, each class member would be required to present evidence that he or she purchased the tokens directly from SafeMoon US as a seller or purchased the tokens because of SafeMoon US's solicitations as an offeror.[96]

Plaintiffs respond that the core issue is whether SafeMoon US's promotional campaign qualifies as class-wide solicitation, a common issue.[97] They also argue that the court already held that mass communications can satisfy § 12(a)(1)'s solicitation requirement.[98] The court did so hold.[99] However, a finding that the lead Plaintiffs plausibly alleged that they purchased SFM Tokens as a result of social media promotions has no bearing on whether other class members have to individually demonstrate successful solicitation to establish § 12(a)(1) liability. Even when a mass communication forms the basis for a § 12(b)(1) solicitation claim, liability only exists against the offeror to the extent that mass solicitation is successful.[100] The individual plaintiff must buy the security because of the solicitation such that he or she can be fairly said to have purchased the security from the offeror.

---

[94] *See Pinter*, 486 U.S. at 647 (The language and purpose of § 12(1) suggest that liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.").

[95] Objection 11.

[96] 15 U.S.C.A. § 77l(a).

[97] Reply in Support of Second SafeMoon Motion ("SafeMoon Reply") 5, ECF No. 227, filed May 15, 2026.

[98] *Id.* at 6.

[99] MTD Order 43.

[100] *See Pinter*, 486 U.S. at 647.

14

### c.    Extraterritoriality

Mr. Karony also argues that extraterritoriality considerations require individualized evidence. In *Morrison v. National Australia Bank*, the Supreme Court noted that the Securities Act applies only domestically.[101] Mr. Karony contends that each class member will have to individually prove that they purchased their SFM Tokens within the United States.[102] Plaintiffs respond that *Morrison* is inapplicable to Defendants' "entirely domestic enterprise" and that the court already overruled a motion to dismiss on extraterritoriality grounds.[103]

As with Plaintiffs' solicitation argument, the court's prior finding that the Complaint includes sufficient facts to plausibly allege that lead Plaintiffs' purchases occurred in the United States[104] does not answer the predominance question. Class members would need to show that they purchased their securities within the United States for the transaction to fall under the Securities Act.[105] However, the court also concluded in its prior order that *Morrison* suggests territoriality is closer to an affirmative defense than a pleading requirement.[106] In the class action context, "a defendant's desire to assert individual affirmative defenses" is often raised, but it "rarely defeat[s] a predominance finding."[107] Thus, even if SafeMoon US raised territoriality and

---

[101] *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 268 (2010); *see also* 17 C.F.R. § 230.901 ("For the purposes only of section 5 of the Act (15 U.S.C. § 77e), the terms offer, offer to sell, sell, sale, and offer to buy shall be deemed to include offers and sales that occur within the United States and shall be deemed not to include offers and sales that occur outside the United States.").

[102] Objection 9.

[103] SafeMoon Reply 5–6.

[104] MTD Order 14–15.

[105] *Id.* at 12–13.

[106] *Id.* at 13.

[107] *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 349 F.R.D. 365, 415 (D.N.M. 2025); *see also Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) ("Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.").

forced some class members to produce individualized evidence, the defense would not weigh heavily against predominance.

### d.    Sales Proceeds

Mr. Karony next contends that the question of where the money from each particular sale went requires individual analysis.[108] But this determination is not necessary. As already discussed, § 12(a) extends liability to individuals who offer unregistered securities in violation of § 5 and states that such individuals are liable to the person purchasing the security from them.[109] Purchasers may sue offerors who violate § 12(a) for damages or to recover the consideration paid for the unregistered security.[110] If SafeMoon US successfully solicited class members to purchase unregistered securities from third-parties on the market, SafeMoon US could still be liable under § 12(a) even without knowing who transferred title of the security in question.[111]

### e.    Damages

Finally, Mr. Karony objects that damages calculations would require individualized proof.[112] Plaintiffs respond that class members' damages can be calculated through uniform, mechanical formulas.[113] Although damage calculations are often individualized to a certain extent, in securities contexts, courts routinely find that the availability of a common formula that can be used to determine damages on a class wide basis does not cause individual issues to predominate.[114] Here, the proposed settlement agreement determines damages based on a

---

[108] Objection 12–13.

[109] 15 U.S.C.A. § 77l(a).

[110] *Id.*

[111] *See* MTD Order 41–45.

[112] Objection 13.

[113] SafeMoon Reply 4.

[114] *See, e.g., In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-CV-00707-DBB, 2021 WL 5882259, at *7 (D. Utah Dec. 13, 2021) (recognizing that damage calculations "could require individualized determinations as to each

16

uniform methodology, the amount each class member paid for their tokens minus the amount each class member received in sale of their tokens.[115] This tracks the statutory damages formula in § 12(a), which allows buyers to recover the amount they paid minus income received upon tender of a security or damages for securities they no longer own.[116] Because damages in this case can be mechanically calculated through a common formula, the issue of damage calculation does not cause individual issues to predominate.

### f.        Weighing Common and Individual Issues

As the court already noted, at least one substantial issue relating to § 12(a) liability—the question of whether class members either bought their tokens directly from SafeMoon US or bought tokens because of SafeMoon US's solicitation—is not susceptible to generalized proof. However, the question of whether SFM Tokens qualify as a security is arguably the most important issue that arises in a § 12(a) claim, and that question is common across the class. At this preliminary approval stage, the court need not definitively determine whether Plaintiffs have shown "under a strict burden of proof" that the class certification requirements are satisfied.[117] Plaintiffs only have to show that the court will be likely to certify the class for purposes of judgment on the proposal such that notice should be distributed to the class.[118] They have done so here. Even though important individual liability issues are present in this case, it is likely that common questions regarding the status of SFM Tokens as a security predominate. But Plaintiffs

---

plaintiff," but concluding that individualized damages do not predominate because the "calculations are mechanical and formulaic"); *see also In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 447 (D. Colo. 2015) (concluding that damage calculations based on § 12(a) statutory measures are common to the class).

[115] SafeMoon Agreement 18.

[116] 15 U.S.C.A. § 77l(a).

[117] *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 502 (D. Kan. 2012).

[118] Fed. R. Civ. P. 23(e)(1).

17

should be prepared to address the predominance issues raised here in the context of the higher standard for final certification.

One additional predominance-related concern in this case is the apparent overbreadth of the proposed class definition. The settlement agreement currently defines the class as "all persons and entities that purchased SFM Tokens from March 8, 2021 through November 1, 2023."[119] This definition is facially overbroad because it includes every individual who purchased the token, regardless of whether they bought it from SafeMoon US or because of a SafeMoon US solicitation. This exacerbates the predominance issue by elevating individual questions of liability to the forefront. Therefore, the court preliminarily certifies a narrower class definition:

> All persons and entities that (1) purchased SFM Tokens directly from SafeMoon US, LLC from March 8, 2021, through November 1, 2023, or (2) saw a solicitation for SFM Tokens that was published by SafeMoon US, LLC and purchased SFM Tokens because of that solicitation from March 8, 2021, through November 1, 2023.

### 2.    Superiority

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[120] The superiority requirement asks whether "a class action would be superior to -- not merely just as good as or more convenient than -- all other available procedural mechanisms."[121] Class treatment is superior when it will "achieve economies of time, effort, and expense, and promote uniformity of

---

[119] SafeMoon Agreement 7.
[120] Fed. R. Civ. P. 23(b)(3).
[121] *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 349 F.R.D. 365, 409 (D.N.M. 2025).

18

decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[122] Matters pertinent to finding superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[123]

As Plaintiffs note, the likely difficulties of managing a class action are not relevant when considering class certification for settlement purposes only.[124]

Here, Mr. Karony objects that the ongoing bankruptcy process against SafeMoon US is superior to a class action and precludes certification.[125] He also argues that a criminal case against him and a civil SEC action related to this matter represent other methods of adjudicating the controversy.[126] Plaintiffs reply that this proposed settlement is not in conflict with the bankruptcy because it is the method by which the estate wishes to distribute funds to claimants.[127] Plaintiffs also argue that the proposed class action is superior to bankruptcy or criminal restitution because claimants may not have the wherewithal to prosecute individual claims or the motivation to make individual bankruptcy claims where their losses were not of sufficient magnitude.[128]

---

[122] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) (*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

[123] *Id.*; *see also Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:64 (5th ed., Dec. 2017 update)) ("Although Rule 23(b)(3) states that these factors are pertinent to both superiority and predominance, 'most courts analyze [these factors] solely in determining whether a class suit will be a superior method of litigation.'").

[124] *See* SafeMoon Reply 2; *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[125] Objection 15.

[126] *Id.*

[127] SafeMoon Reply 6.

[128] Second SafeMoon Motion 17.

19

The current action was filed prior to the bankruptcy action or the criminal proceedings. The large number of potential class members,[129] along with the small individual value of SFM Tokens,[130] supports Plaintiffs' contention that many if not most putative class members may not have claims of sufficient value to warrant individual litigation.[131] This supports a finding of superiority. Additionally, the parties point to no ongoing individual proceedings outside of the bankruptcy claims. Because the current litigation preceded the bankruptcy proceeding and would resolve class members' claims without the added complexity of filing individual bankruptcy claims, the court finds that the second factor also weighs in favor of superiority. Finally, because SafeMoon US is headquartered in Utah, this district is a desirable forum to resolve the claims.[132] The court concludes that it will likely be able to find that a class action would be superior to other available methods.

### C.    Other Considerations

#### 1.    Ascertainability

Although it is not a class certification requirement enumerated in Rule 23, class ascertainability is often considered in the context of class certification.[133] "For class members to be ascertainable, the class definition must (1) be defined clearly and cannot be defined too vaguely, and (2) be defined objectively and cannot be based on subjective criteria, such as by a

---

[129] Both Mr. Karony and Plaintiffs agree that approximately 710,000 SFM Token wallet holders exist. *See* Objection 11; SafeMoon Reply 7.

[130] The Amended Complaint alleges that SMF Tokens initially launched with 1 quadrillion tokens at a price-per-token of $0.0000000004. Amended Compl. ¶ 54.

[131] *See also* SafeMoon Bankruptcy Claims, ECF No. 223-4, filed Apr. 3, 2026 (listing claims asserted in the bankruptcy action, including several claims worth only hundreds of dollars).

[132] Amended Compl. ¶ 10.

[133] *Cline v. Sunoco, Inc. (R&M),* 159 F.4th 1171, 1194 (10th Cir. 2025).

person's state of mind."[134] The movant seeking class certification bears the burden of showing that class members can ultimately be identified.[135]

In this case, the proposed class is defined as "all persons and entities that purchased SFM Tokens from March 8, 2021 through November 1, 2023,"[136] and the court has added additional requirements that better align with § 12(a) liability. Plaintiffs argue that the class can be easily ascertained by reference to trading and sales records.[137] Mr. Karony objects that the current class is not ascertainable because it is overbroad and includes all SFM Token purchasers, not just those who have a claim against SafeMoon US.[138] But the issue of personal liability to individual class members is more relevant to a predominance analysis, and the court's narrower definition alleviates the overbreadth problem. Ascertainability only requires a clear and objective class definition, and that is satisfied here.

### 2.      Other Objections

Mr. Karony makes numerous other objections to the proposed settlement agreement. He argues that Plaintiffs' sole remaining claim against SafeMoon US is barred because SafeMoon US was never an issuer, underwriter, or dealer, so its transactions did not need to be registered.[139] This objection asks the court to decide the merits of Plaintiffs' claim. But, as the court already noted in its previous settlement order, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on

---

[134] *Id.* at 1196.
[135] *Id.*
[136] SafeMoon Agreement 7.
[137] Second SafeMoon Motion 14.
[138] Objection 19.
[139] *Id.* at 5.

21

the merits, but rather whether the requirements of Rule 23 are met."[140] The court cannot make the legal and factual determinations necessary to decide the merits of Plaintiffs' claims at this stage, so this objection goes beyond the Rule 23 certification requirements.

Mr. Karony also objects that the proposed settlement does not satisfy the Rule 23(e)(2) adequacy requirements.[141] As the court noted above, it already determined that the proposed settlements are likely to satisfy the Rule 23(e)(2) requirements in its previous order.[142] In doing so, the court addressed numerous objection by Mr. Karony related to adequacy and reasonableness.[143] The court will not reconsider its previous determination or re-address Mr. Karony's arguments here.

## III.   Paul/Keem Class Certification

Plaintiffs also move to certify classes for settlement purposes with Defendants Jake Paul and Daniel Keem.[144] No party has objected to this motion.

### A.   Rule 23(a)

The proposed Paul and Keem settlement agreements are substantially similar to the SafeMoon agreement. They identify the same class defined in the SafeMoon proposal and name the same lead plaintiffs.[145] Plaintiffs' arguments for certification of the class with respect to Mr. Paul and Mr. Keem are nearly identical to those they make in favor of certification of the SafeMoon class.[146] Accordingly, much of the court's previous analysis with respect to class

---

[140] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (quoting *Miller v. Mackey International*, 452 F.2d 427 (CA5 1971)); Settlement Order 11.
[141] Objection 19.
[142] *See* Settlement Order 5–11.
[143] *Id.*
[144] Second Paul/Keem Motion 1.
[145] *See* Paul Agreement 4; Keem Agreement 4.
[146] *See generally* Second Paul/Keem Motion.

certification for the SafeMoon agreement also applies to the Paul and Keem agreements. The proposed class is sufficiently numerous because it will likely include at least several thousand individuals.[147] Common questions exist, including the issue of whether the SFM Tokens qualify as a security.[148] Finally, Plaintiffs' claims are typical of the class, and Plaintiffs will adequately represent the class for the same reasons discussed above with respect to the SafeMoon agreement.

In addition, the ascertainability requirement is satisfied for the Paul and Keem agreements. Because these proposed agreements use the same class definition as the SafeMoon agreement, the classes here are similarly described by a clear and objective definition.

### B.      Rule 23(b)(3)

Like with the proposed SafeMoon agreement, Plaintiffs argue that the Paul and Keem agreements qualify for class action certification under Rule 23(b)(3) under the predominance and superiority requirements.[149]

#### 1.      Predominance

The Amended Complaint asserts a § 12(a)(1) claim for sale of unregistered securities against Mr. Paul and Mr. Keem as well as against SafeMoon US.[150] Plaintiffs' predominance arguments in support of all three proposed settlement agreements are similar and primarily relate to this claim.[151] As such, the court's prior analysis applies here. As the court already stated, for Plaintiffs' § 12(a)(1) claim, the question of whether SFM Tokens qualify as a security is

---

[147] *Id.* at 8.
[148] *Id.* at 9.
[149] *Id.* at 7.
[150] Amended Compl. ¶¶ 474–82.
[151] *See* Second SafeMoon Motion 14–16; Second Paul/Keem Motion 14–16.

23

common to the entire class and is susceptible to class-wide proof.[152] However, the issue of whether class members purchased their tokens as a result of Mr. Paul and Mr. Keem's solicitations requires individualized evidence of successful solicitation.[153] At this preliminary phase, the court finds that the common question of whether SFM Tokens qualify as securities is likely to predominate over individualized questions of liability under § 12(a). However, the overbroad class definitions in the Paul and Keem agreements must likewise be narrowed to keep individual issues from predominating over common questions. The court preliminarily approves the following class definition for the Paul agreement and the Keem agreement respectively:

> All persons and entities that (1) purchased SFM Tokens directly from [Jake Paul]/[Daniel M. Keem] from March 8, 2021, through November 1, 2023, or (2) saw a solicitation for SFM Tokens that was published by [Jake Paul]/[Daniel M. Keem] and purchased SFM Tokens because of that solicitation.[154]

### 2.    Superiority

Here, as with the SafeMoon agreement, a class action is likely to be superior to other methods of adjudication. Class members' individual claims may be too small to warrant individual claims, and the court is unaware of any separate actions by class members against Mr. Paul or Mr. Keem. Neither defendant in these agreements is located in Utah,[155] so the forum does not weigh in favor of class action proceedings here. However, the large proposed class and

---

[152] *See supra* section II.B.1.a.
[153] *See supra* section II.B.1.b.
[154] The court notes that the Amended Complaint asserts multiple claims against Mr. Paul and Mr. Keem, including securities fraud, state law claims, common-law conspiracy, and RICO violations. *See* Amended Compl. ¶¶ 457, 499, 508, 527, 561. However, because Plaintiffs' arguments relating to class certification and predominance for the Paul and Keem classes focus almost entirely on the § 12(a) claim, *see* Second Paul/Keem Motion 14–16, the court preliminarily certifies and narrows the proposed classes solely on those grounds.
[155] Amended Compl. ¶¶ 22, 26.

efficiency considerations here are sufficient for a class action to be the superior method of adjudication.

## IV.    Notice

Plaintiffs also ask the court to approve the form and manner of their proposed class notice and appoint Stretto, Inc. as claims administrator.[156] Rule 23(e)(1)(B) instructs the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."[157] This notice must be, as in any proceeding, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[158]

In this case, Plaintiffs request approval of a proposed settlement notice, proof of claim, notice of motion for attorney's fees, and summary notice.[159] Having reviewed these documents, the court determines that they provide sufficient information for class members to understand and exercise their rights. They clearly communicate putative class members' rights and potential courses of action, as well as the consequences of each course of action.[160] This is reasonable notice. However, Plaintiffs must make some minor adjustments to the notice forms and proof of claim form where necessary to clarify that only individuals who fall into the narrower class defined by the court are potentially eligible to recover.

Plaintiffs also propose distributing notice to known creditors and by publishing notice online via a dedicated website, through social media channels, through a newswire service, and

---

[156] Second SafeMoon Motion 1, 23; Second Paul/Keem Motion 1, 22.
[157]    Fed. R. Civ. P. 23(e)(1)(B).
[158] *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950).
[159] Second SafeMoon Motion 23; SafeMoon Agreement 40–64; Paul Agreement 38–61; Keem Agreement 39–62.
[160] *See* SafeMoon Agreement 41.

25

on at least one online cryptocurrency media outlet.[161] These channels are reasonably calculated to provide potential class members with notice of the settlement and an opportunity to participate or opt-out. Accordingly, the court approves Plaintiffs' proposed notice documents and procedures and appoints Stretto, Inc. as claims administrator. The court also approves Plaintiffs' proposed settlement schedule[162] and will set a date for a final settlement hearing.

## V.       Coordination Hearing

Finally, Mr. Karony requests that the court hold a hearing to discuss potential coordination between this case, the bankruptcy proceedings with SafeMoon US, the criminal case in New York, and the SEC civil case in New York.[163] He argues that having multiple "parallel" proceedings without coordination risks allowing double recovery or diminishing the settlement funds.[164] But such a hearing is not contemplated in the Federal Rules of Civil Procedure, and Mr. Karony points to only a single example of a similar coordination hearing being held.[165] In that case, *United States v. Dreier*, judges in three related proceedings in the Southern District of New York chose to coordinate the proceedings where multiple competing parties sought the same funds.[166]

A cross-country coordination hearing is not necessary in this case. Mr. Karony, not SafeMoon US, is the defendant in the relevant criminal case.[167] And the proposed SafeMoon

---

[161] Second SafeMoon Motion 23.
[162] *Id.* at 24–25.
[163] Motion for Coordination Hearing 2–3.
[164] *Id.* at 4–6.
[165] *Id.* at 3.
[166] *United States v. Dreier*, 682 F. Supp. 2d 417, 418 (S.D.N.Y. 2010).
[167] *See United States v. Karony*, No. 23-CR-433, 2026 WL 1283970, at *1 (E.D.N.Y. May 11, 2026) ("Defendant Braden Karony was convicted, following a jury trial, of having participated in three criminal conspiracies.").

settlement here already operates in conjunction with the bankruptcy proceedings.[168] The risk of double recovery by class members is low, and the judicial process in this case would only be delayed by unnecessarily attempting to coordinate multiple cases as Mr. Karony suggests. Indeed, needless delay is the primary if not only likely result of Mr. Karony's request. Mr. Karony's coordination motion is denied.

## ORDER

Plaintiffs' [223] and [224] motions for preliminary approval of proposed class-action settlements are GRANTED. Defendant Karony's [226] Motion for Coordination Hearing is DENIED. The court sets a Settlement Fairness Hearing for October 22, 2026 at 10:00 a.m. in courtroom 8.100.

Signed June 22, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[168] *See* SafeMoon Reply 6 (asserting that the settlement agreement "is the mechanism by which the estate will resolve and distribute funds to the token-holder claimants"); SafeMoon Agreement 41 (requiring class members to submit proof of claim forms through the bankruptcy proceeding).

27